## ALEXANDER *vs.* FISHER & WIFE.

1. Distributees of an estate, who have voluntarily contributed the respective sums, with which they were chargeable by reason of over-advances made by the administrator in a partial distribution of the estate, are not necessary parties to a bill filed by him, to recover contribution from another distributee, who refuses to re-imburse him.

2. Where an administrator, who, after distribution of the personal estate, is compelled to pay demands against his intestate to an amount beyond the value of the assets left in his hands, sells the lands of the estate for a sum sufficient fully to indemnify him, the widow, to whom dower in the lands had previously been allotted, has no interest in the proceeds of such sale, and cannot resist a bill filed by the administrator against her alone, to recover the sum chargeable on her distributive share, upon the ground that they should be applied to the discharge of *her* liability, and that the heirs are necessary parties before such application can be made.

3. Although as a general rule, an administrator, who, knowing of the existence of demands against the estate, which he is afterwards compelled to pay, proceeds to make distribution without requiring a refunding bond, cannot enforce contribution from the distributees, it will not apply where such distribution is made with the consent and for the accommodation of the distributees, without a full knowledge of the condition of the estate as respects its indebtedness, and under an honest belief that such demands are unjust and can be successfully resisted.

ERROR to the Chancery Court of Lowndes. Tried before the Hon. J. W. Lesesne.

THE bill in this case was filed by the plaintiff in error, who was administrator of Edmund Alexander, deceased, to have contribution decreed him from the defendants (one of whom was the widow of the intestate and is now the wife of William P. Fisher, her co-defendant,) for monies advanced by him over and above the assets, in payment of the debts of the estate. It appears by the record, that the intestate died in December 1840, leaving a large estate, real and personal, and four children and his widow as the distributees thereof; that he was an aged man, was prudent and careful in matters of business, and had for many years before his death made it a cardinal principle to owe no man and not to incur responsibility for any one; and that he could not write his name, but usually executed instruments by affixing his mark. It appears further that there were certain notes, to which his name was appended as the security for one Durden, who was insolvent, to the amount of about ten thousand dollars, held by the Branch Bank at Montgomery, but his name was in the hand-writing of a stranger and no mark accompanied it; and that the administrator and distributees, although informed of the existence of these notes, from the circumstances above detailed, did not believe them to be genuine, and by common consent and for the convenience of the distributees, proceeded in January 1841, to a division of the slaves of the estate, leaving about five thousand dollars worth of assets in the hands of the administrator, which it was thought would be sufficient to discharge the liabilities of the estate. This division took place without refunding bonds being required by the administrator. The notes above refered to were afterwards put in suit against the administrator,

and upon the plea of *non est factum* verdict and judgment were rendered against him, which he has since paid. After the payment of this judgment, a settlement of the administration of the personal estate, to which all the distributees were regularly made parties, and at which the defendants appeared by their counsel, was had in the Orphan's Court, and a balance of upwards of ten thousand dollars was found due to and was certified in favor of the administrator. A portion of the real estate of the intestate, out of which the widow had previously been allotted her dower, was afterwards sold by the administrator, under an order of court to pay debts, for eleven thousand dollars, and with the assent of the heirs at law, so much of this sum as was necessary, was appropriated to refund to the administrator, their respective portions of the deficiency, arising from the cause above stated. The answer sets up as a defence, that the widow did not receive an equal number of the slaves with the other distributees, having relinquished her dower in some of the lands belonging to the estate and given up two of the negroes allotted her, to the other distributees, in exchange for a favorite house servant, of much less value than the dower and the two slaves thus given up, and that the real estate, having been sold under an order of court to pay the debts, and having yielded a sufficient amount to pay the whole deficiency, the proceeds should be so appropriated. There was a demurrer to the bill for want of equity, and because of the non-joinder of the other distributees as parties defendant, and on this latter ground the chancellor dismissed the bill.

STONE & JUDGE, for the plaintiff.

BOLING and N. COOK, for the defendants:

The administrator has sold the land, and has the money in hand to pay all the debts of the estate. He cannot sue for the benefit of the other legatees.—See 1 Story's Eq. Juris. § 92, and note 4; 2 Fonbl. Eq., b. 4, pt. 1, ch. 2, § 5, and note p, and authorities there cited.

2. The defendants are not bound to refund to plaintiff, complainant in this case, because he divided the property and was not compelled to do so, and because there was originally no deficiency of assets, and because plaintiff knew of the debts before

he distributed the property.—2 Fonbl. Eq., b. 4, pt. 2, § 5, note p., Newman v. Barton, 2 Verm. 205; Orr v. Kaines, 2 Ves. sen., 194; Nelthorp v. Hill, 1 Ch. Ca. 136; 3 Cranch, 249—see also, 1 Story's Eq. Juris., *supra*.

3. A legatee may be compelled to refund at the instance of creditors, but it is different with the executor or administrator.— See authorities, *supra*.

4. Complainant and the other heirs are bound by the sale of the real estate, all being parties to the proceeding, and the land was sold for the purpose of paying debts, as shown by the petition. When the real estate was sold it became assets in the hands of the administrator.—2 Story's Eq. Juris. (last ed.) § 1060; 3 Comyn's Dig., 560, viii. The proceeds of the sale of the real estate being in the hands of the administrator, there is now no deficiency of assets.

5. Complainant knew the estate would have to pay these debts. The testimony shows the Durdens were insolvent at the death of Edmund Alexander. The whole record shows great carelessness on the part of complainant in dividing the property without requiring bonds. Under all the circumstances so much carelessness has he manifested, that he will have to suffer for the negligence, especially as he acted with a knowledge of these debts.

6. The heirs should have been made parties, and the chancellor did right in dismissing the bill upon that ground.

CHILTON, J.—1. This is not a case where the administrator is suing for the benefit of the other distributees, but the bill proceeds on the ground, that the settlement of the estate in the Orphans' Court, and the ascertainment of the amount due in a proceeding to which all the parties interested were before that court, is binding upon them; and the amount being thus ascertained and the distributees, except Mrs. Fisher, having paid their respective portions, the complainant seeks to obtain a decree against her and her husband for the amount she should refund. Having paid the portions for which they were bound, the other distributors have no interest in the litigation between the complainant and Fisher and wife. The previous distribution having been equal between the distributees, each should refund, if either is bound to refund, an equal sum to the administrator.

If Fisher and wife received less than an equal share of the property distributed, and took the same in satisfaction of their interest, as upon a compromise of their rights in the estate, whereby it would become unjust to charge their portion with the same amount to be refunded, which is charged upon the other distributees, who received a greater amount of property, then, as they have agreed it should be considered equal as between them and the other distributees, it is incumbent upon them to file a cross bill to open the settlement, and to be let in to share a larger portion than they have received. So long as the agreement for the distribution remains unimpeached and in full force, as equal between all the parties, and no effort is made to go behind it, we see no reason for bringing the other distributees before the court. Suppose the administrator, instead of distributing the property in specie, had sold it, and had paid to each distributee the same amount in money, each being entitled to an equal amount, and all the distributees being bound to refund for the payment of a debt which has been established as a demand against the estate, that all but one should pay back his portion without suit, we can see no reason why the administrator, in suing the defaulting party, should bring the others who have paid, into court. No decree would be sought against them. If the allegations of the bill, that each distributee had received an equal portion and was bound to refund an equal sum, were true, the defendant could not look to the others for contribution to her loss, for in that event, she has paid no more than she was bound to pay, and no more than each of them, standing in precisely the same relation to the demand, has paid. On the other hand, as they have paid all that the administrator could have recovered, he could, of course, assert no further claim upon them. So that it is manifest, the other distributees need not be made parties. They have no interest in the litigation unless the agreement of division should be attacked. If that is impeached for the purpose of establishing a new and different basis for contribution, they then become interested, and no decree could be pronounced without making them parties. This the bill before us does not attempt, and if the defendants have grounds for controverting the equality of the distribution between the children of the intestate and the widow, they should do so by cross bill. As the case is presented before us, they have no concern whatever in the question whether the

Alexander v. Fisher & Wife.

widow contributes or not, and no decree is sought against them. Therefore, it is not necessary to make them parties.—Story's Eq. Pl. § 231.

2. The administrator's right to retain out of the proceeds of the land for the amount due from the heirs of the estate, has no effect upon the question of parties. The widow, to whom dower has been assigned, has no interest otherwise in the land, or in the proceeds thereof, when sold to pay the debts, nor will a recovery by the complainant increase or diminish this right of retainer as against the heirs. If the administrator has apportioned to the widow her share of the personal estate, he must look to her alone for the proportion which that share should contribute to his indemnity, in the payment of debts which he has been compelled to pay out of his own effects, by reason of the deficiency of the unapportioned assets.

The release of a part of her dower by the widow, in consideration of an exchange of slaves made by her with the heirs, does not entitle her to set aside the division made of the personal property, nor in any way change the condition of the parties with respect to this suit. The objection for want of proper parties should have been disallowed by the chancellor.

3. We come next to consider the merits of this controversy. It must be conceded as a general rule, that if an executor or administrator, with a *knowledge* of the existence of demands against the estate, pay out legacies or make distribution of the assets, he cannot recover back from the legatees or the distributees, to whom he has thus turned over the effects, any thing for his own indemnity, unless he has obtained from them refunding bonds. If, with such knowledge, he submits to pay legacies or distribute the property, the persons receiving the same have the right to regard it and treat it as their own. It is given to them absolutely, and closes the transaction between them and the administrator, &c. So that whilst a creditor of the estate, or an unpaid legatee or distributee, in case of a deficiency of assets of the estate to pay the whole, might proceed against the person receiving the share thus turned over, the personal representative would be foreclosed by his own act from doing so, as the court will not relieve him from the consequences of his own folly which he knowingly and voluntarily superinduces.—1 Story's Eq. Juris. §§ 90-1-2, and notes. But to apply this harsh and stringent rule

to cases where the personal representative in *good faith*, and influenced by a desire to aid the distributees, and without any motive personal to himself, has divided the property or submitted to a division, without a *full knowledge* of the condition of the estate with respect to the debts due from it, would in many cases work the greatest injustice and hardship.

In the case before us, the intestate had a large estate consisting chiefly of slaves and real estate. He died in December, and in a few weeks after his death, the division was made. It was highly beneficial to the distributees, at the beginning of the year, to have the slaves apportioned to them, so as to enable them to make their arrangements as to the proper conduct of their farming operations. The division and distribution occurring thus early, the administrator, who retained of the effects what would reasonably meet the demands against the estate, as he supposed, could not be presumed to have been as familiar with its affairs as he afterwards became. We grant the evidence shows he had some notice of the existence of the notes due to the Branch Bank and to others, for which the intestate's estate, it seems, has been made liable by suit, but we think it very clear that he was not fully advised upon that subject. He was acquainted with the peculiarities of his father, his caution, his repugnance to going in debt, his inability to write his name; whereas, the notes for the payment of which the estate has been charged, were for near ten thousand dollars, and purported to be signed by him as security for one who was notoriously insolvent. Besides, they appear to have been signed by one who could write, and the administrator knew that his intestate signed by making his mark. All these facts taken together, we think, will satisfy any reasonable mind, that the administrator did not believe that these were the notes of his intestate, and that the circumstances fully warranted his incredulity. Moreover, when they were set up as subsisting against the estate, he promptly met them with his plea of *non est factum*, but was overcome by the testimony of the principal in the notes. Should he, under these circumstances, be compelled to pay the judgments, amounting to upwards of thirteen thousand dollars, out of his own pocket, simply because under a mistaken view *of the fact* that such notes were made by his intestate, he has as a matter of favor or accommodation distributed the property among those entitled to it? We think

not. The administrator has acted in good faith. There has been on his part no fraud or collusion, but if he has been at all in fault, his error consisted in not requiring refunding bonds before making distribution; but even this may find some apology in the liberal confidence, which may be presumed to have obtained between members of the same family with respect to their common property, and the charges and burthens to which it was subject.

In Bomer's Ex'rs v. Glendenning et al., 4 Mumf. 219, a bill was filed by the executor, alleging that a judgment had been recovered against him for thirteen hundred and ninety-one dollars and forty-six cents, as executor, for a debt due from his testator, and that previous to the rendition of the said judgment, he had distributed the property according to the will; that all the distributees had refunded their respective portions except the defendants. Judge Roane pronounced the decree, and reversing the decree of chancellor Taylor, considered the complainant entitled to recover a rateable proportion of the debt, there having been no fraud or collusion between the executor and the party obtaining the judgment.

Near thirty years after this decision was made, the same point arose in the case of Gallega's Ex'rs. v. The Attorney General, 3 Leigh's R. 450, and Judge Tucker, the president of the Court of Appeals, reviews the cases applicable to it, and concludes that in cases where the executor has divested himself of the assets without fraud or misconduct in the management of the estate, and has acted *bona fide*, with honest intentions, and without any apparent advantage to be derived to himself from his errors, the tendency of modern decisions went to relax the severity of the ancient adjudications upon the subject, and he adds, "I am therefore inclined to think that there is no inflexible rule, which refuses to an executor, under all the circumstances, a right to recover back from a legatee an excess of advancement, which may have been made to him above his rateable proportion of his legacy. He then recurs to the well known distinction between a mistake of law and a *mistake of fact*, holding such case to fall within the relief afforded in respect of the latter. The point seems to have been well considered by him, and the authorities are cited and commented upon, which relieves us from the necessity of a more particular reference to them.—See also, Sel-

lers, guardian, v. Smith, 11 Ala. 264, and cases cited by Judge Story, 1 Com. Eq. Juris. 108, § 90, notes 1, 2,—4th ed.

Let the decree of the chancellor be reversed, and the cause remanded, that the amount which should rateably be charged against the defendants, according to the principles of this opinion, may be ascertained and decreed to be paid the complainants. Decree accordingly.