## PEARSON, ET AL. *vs.* DARRINGTON, ADM'R.

1. The doctrine of relation back to a past time is a fiction which is often indulged, in advancement of justice, to sustain legal proceedings; but it is never resorted to, when the result would be, to deprive a party of a clear legal right, or when it would work manifest injustice.

2. The statute which limits appeals from an interlocutory decree dissolving an injunction, "*to the next term* of the Supreme Court," means, *the next term to which an appeal may be taken according to the general law regulating appeals.*

3. Such appeals are, in other respects, subject to the same rules which govern appeals in other cases, and unless the decree is rendered a sufficient length of time before the commencement of the first term of the Supreme Court, to enable the appellants to give the citation required by the statute in cases of appeals and writs of error, the appeal is properly returnable to the next term of the court to which it may be returned, allowing to the appellants time to give the required notice.

4. Where the regular term of the Chancery Court commenced on the first Monday in December, and was limited to one week, and a cause was submitted on a motion to dissolve an injunction, with the agreement of the counsel that the Chancellor should render his decree in vacation as of that term, and a decree dissolving the injunction was afterwards rendered, dated the 3rd of January, but not filed in the office of the register until the 10th of January, *Held:* That an appeal from this decree was properly taken to the next June term of Supreme Court.

5. When the settlement of an estate has been removed from the Court of Probate into the Court of Chancery, by a bill regularly filed, and the latter court has

rightfully taken jurisdiction, and the defendant has answered the bill, and the cause is progressing in the equity form, the administrator, pending such suit, proceeds in the Court of Probate at his peril, and is liable to have his acts reviewed; and any rights which he may acquire by reason of the action of the Court of Probate, may be divested by the Court of Chancery, if such rights in any wise conflict with, or embarrass the proper administration of the estate in equity.

6. Where the settlement of an administration is withdrawn from the Orphans' Court, by a bill filed in the Court of Chancery, and the cause is progressing in the latter court, it is competent for that court, if the exigencies of the estate require it, to direct, by interlocutory decree, a sale of the slaves belonging to the estate, for cash, at an unusual season of the year for selling such property, upon the petition of the administrators or of the creditors; and this, even before an accounting is had between the administrator and the complainants.

7. And if, in such case, the administrator invokes the aid of the Orphans' Court, and obtains an order of sale, and purchases the slaves sold for himself, it is the duty of the Court of Chancery, to provide that the slaves so purchased by him shall be forthcoming to abide the final decree in the cause.

8. If an administrator, pending a suit in equity for the settlement of the estate, pays demands against the estate, and seeks to indemnify himself, by selling the property, under an order of the Orphans' Court, and purchasing it himself; or, if he has extinguished demands by giving his individual obligations, which have been reduced to judgments, and he seeks, by a purchase of the property, to invest himself with the title, so as to make it subject to levy; in either event, the Court of Chancery will hold the property subject to its control, to abide whatever decision the justice and equity of the case may require to be made on the final hearing.

APPEAL from the Chancery Court of Dallas.

Tried before Hon. W. W. MASON.

This bill was filed by the plaintiffs in error, against the defendant, as the administrator with the will annexed of William Matherson, deceased, to recover certain legacies which were bequeathed by said testator to Maria Pearson, one of the complainants, and for an account and settlement of the administration. A supplemental bill was afterwards filed, which alleges, that after the filing of said original bill, said administrator petitioned the Orphans' Court of Clarke county for a sale of the personal property of said estate, for the purpose of paying off outstanding liabilities of the estate; that said Orphans' Court granted said order of sale, and authorized said John Darrington "to sell at public auction for cash fifty negroes, more or less, as the demands of the estate might require, with a view to the interest of the same ac-

cording to law;" that said sale was accordingly afterwards had, and said administrator himself purchased all of said negroes except three; that said purchase was made by collusion between the administrator and the auctioneer, and the slaves knocked down at less than their value. The bill also charges, "that the said Jacob Pearson, one of your orators, is informed, and he fears and believes the information to be true, that the said John Darrington intends, either to send said slaves he so pretended to purchase out of this State, and to be sold by him, or to point them out to the sheriff or marshal as his property, and to be sold under execution against him, as the security of Mrs. Maria Matherson, the widow of said William Matherson; either of which actings by the said John Darrington would go to the great wrong, damage, and injury of complainants."

The bill prays, that said purchase by the administrator may be declared void, and that he may be enjoined from selling or removing said slaves, or causing them to be sold by the sheriff as his property; and the injunction was awarded.

The administrator, in his answer, admits the sale under order of the Orphans' Court, but insists that it was conducted fairly, and without any fraud or collusion, and that all the negroes purchased by him brought more than their full value. As to the charge that the defendant intended either to send said slaves out of the State, or cause them to be levied on as his property, the answer is silent, neither admitting nor denying it. Other matters are set up in the answer, but it is not deemed material to notice them.

The Chancellor dismissed the bill, for want of equity; but his decree was reversed by the Supreme Court, at the June term, 1850, and the cause was remanded for further proceedings. Se 18 Ala. Rep. 348. At the December term of the Chancery Court of Dallas, held on the first Monday in that month, 1851, the defendant moved to dissolve the injunction, on his answer, and for want of equity in the supplemental bill; and, by the written consent of counsel, it was agreed, that the Chancellor should render his decree in vacation, as of that term. The Chancellor dissolved the injunction; from which order the complainants prayed an appeal, and moved to re-instate the injunction. The appeal was granted, and the

injunction was re-instated until the decision of the Supreme Court upon the appeal should be made. The decree dissolving the injunction is dated January 3, 1852, but it appears from the endorsement of the register, that it was not filed in his office until January 10, 1852. The record was not filed in the Supreme Court until the June term, 1852, and the appellee now moves the court to dismiss the appeal, because it was not brought up to the January term, 1852. The case is at the same time submitted, on the errors assigned by the appellants, viz: the decree of the Chancellor dissolving the injunction on the supplemental bill.

WILLIAMS & COCKE, for appellants:

1. Injunction can only be dissolved on denial of the equity, charged in the bill.

2. An administrator or executor, being a trustee, cannot purchase the trust estate at his own sale.

3. Before purchase by an executor at his own sale of the trust estate can be sustained, the executor must show, by proof entirely satisfactory to the court, that the sale and purchase was fair, and *bona fide*. McCartney, et al. v. Calhoun, 17 Ala. 303.

4. The order of the Orphans' Court for Clarke county, allowing the sale for cash of fifty slaves, or more, by the executor to pay debts, is void, and confers no power to sell. Act of Assembly, 1847–48, page 124, No. 65. Such sale could only be valid when on a credit of at least six months. Clay's Dig. 223–224, § 13.

5. Where chancery has assumed jurisdiction over the acts of an executor or administrator, in settlement of his accounts, the Orphans' Court is ousted of jurisdiction, and an order for the sale of personal property afterwards by the Orphans' Court, either for cash or credit, confers no power on the executor or administrator to sell; and, therefore, such sale and purchase by him of the slaves of the estate is void. In such case, chancery will order a sale. Wilson and wife v. Crook, et al., 17 Ala. 59.

6. A sale by executor or administrator of the slaves of the intestate in June and July, for cash, and purchase by himself, is fraudulent and void; and this especially, where the

slaves are not removed from the plantation, but permitted to remain there and work after the sale same as before; and this more especially, when no cash is paid by the executor, and he pretends to have sold to refund to himself for moneys advanced by him to the estate.

BELSER & RICE, *contra:*

1. An appeal from an interlocutory decree dissolving an injunction, must be taken before the Chancellor, and is precisely the same as if the decree was made in term time. Griffin v. Br. Bk. at Huntsville, 9 Ala. 201.

2. In this case, under the agreement of the facts, the decree rendered on the 3d January, 1852, is to be taken as of the term (December term, 1851) when the cause was submitted on the motion to dissolve the injunction. And as the December term, 1851, of Dallas Chancery Court, by the act of 1848, commences on the first Monday in December, and is limited to one week, the decree must be taken as one rendered early in December, 1851.

3. But even if taken as a decree rendered on the 3d day of January, 1852, the appeal is barred, because of the failure of the appellant to file the transcript and appeal during the January term, 1852. Clay's Dig. 357, § 80.

4. Under the statute allowing the appeal, the appellant was entitled to the whole of the January term, except the last day thereof, to file the transcript and bring the appeal to a hearing. But as he failed to file the transcript during the term, his appeal expired with that term.

5. When the time to prosecute an appeal, or for any other purpose, is prescribed by the rules or practice of the court, it may be enlarged by the court upon good cause shown. But when the time for the prosecution and determination of an appeal is fixed by the statute, it is unbending, and cannot be enlarged. The court possesses no dispensing power. Jackson v. Wiseburn, 5 Wend. 136: Caldwell v. Mayor, 5 Paige, 572; Munson v. Cage, 1 Martin's Rep. (N. S.) 573; 1 Humph. Rep. 60; Cook v. United States, 1 G. Green's (Iowa) Rep. 39; 1 Smedes & Marsh. 657.

6. The register has no lawful authority to mark on a decree the time when it was filed. His unauthorized endorsement cannot vary the date of the decree itself.

7. No notice of an appeal from an interlocutory order dissolving an injunction, is required or authorized by the act which allows the appeal. The statute regards both parties as present when the appeal is taken, and charges them with notice. And herein is a striking difference between a writ of error and an appeal from such interlocutory decree. "The next term of the Supreme Court," as used in the statute allowing the appeal, is the term which begins next after the day on which the decree is rendered by the Chancellor. The plain object of the statute is a speedy trial of the appeal.

8. The date of such decree is conclusive evidence of the day on which it was rendered, and cannot be varied by any evidence in the appellate court. Bishop's Heirs v. Hampton, 19 Ala. 792; Metcalf v. Metcalf, ib. 319; Saltmarsh v. Bird, ib. 665; Ansley v. Robinson, 16 Ala. 793.

9. The supplemental bill is not authorized by the original bill and the rules of chancery practice. It joins as complainants persons who were not parties to the original bill, nor made parties by any amended bill. It relates to matters essentially different from those in the original bill, and incompatible with them. It embraces by its injunction some of, if not all, the property embraced by the injunction granted on the original bill, and dissolved before the filing of the supplemental bill. The supplemental bill ought to be repudiated by the court. Allen v. Mont. R. R. Co., 11 Ala. 437.

10. The answer denies the equity (if any) of the supplemental bill. The denial may either be direct or by setting up facts inconsistent with the averments of the bill.

CHILTON, J.—The motion made by Darrington to dissolve the injunction in the court below, was made at the December term, 1851, and the Chancellor, under the written agreement of the respective counsel, held the cause under advisement, with the permission of said counsel that the cause should be decided and returned in vacation. The Chancellor pronounced a decree dissolving the injunction, but upon the application of the complainants granted an appeal, and ordered the injunction to remain of force until the appeal should be tried by the Supreme Court, on the execution of a bond, which was duly entered into and filed.

This decree was dated the 3d of January, 1852, but the register's endorsement shows that it was filed on the 10th of that month.

It is contended on the part of the appellee, that this decree must be regarded as rendered during the first week in December, that being the period limited by law for the session of the Chancery Court of Dallas, and that, inasmuch as appeals from decrees dissolving injunctions are required to be taken to the next term of the Supreme Court after their rendition, this appeal, which was to the present June term, should be dismissed.

We cannot assent to the proposition, that the decree must be regarded as rendered during the December term, for the purpose of ascertaining the term of the Supreme Court to which an apppal from it would lie. The doctrine of relation back to a former period is a fiction which is often indulged in advancement of justice, to sustain legal proceedings; but it is never resorted to when the result would be, to deprive a party of a clear legal right, or when it would work manifest injustice.

Instead of allowing three years for taking an appeal from decrees of this kind, the statute limits the appeal to the next term of the Supreme Court. This means the next term to which the appeal may be taken, according to the general law regulating appeals; otherwise, to hold that the party was bound to appeal to a term of the Supreme Court which commenced before the decree was returned into the primary court by the Chancellor, would be to require an impossibility. Such was not the intention of the Legislature. We are quite sure that the law imposed no obligation upon the appellants to prosecute their appeal to the January term, 1852, of this court, as the decree was not handed in until after that term had commenced.

We are of opinion, also, that such appeals, with the exception of being made returnable to the next term of the Supreme Court, are subject to the same rules which govern appeals in other cases; and that unless the decree is rendered a sufficient length of time before the commencement of the term of this court, to enable the appellants to give the citation required by the statute in cases of appeals and writs of error, the said ap-

peal is properly returnable to the next court to which it may be returned, allowing to the appellants time to give the required notice. There is no repeal of the statute requiring citation in such cases, and the law does not favor the repeal of statutes by implication. The argument, that the party is presumed to have been in the court when the appeal was granted, and must be cognizant of it, would apply to all cases of appeal as well as this, and therefore proves too much.

The motion to dismiss the appeal must consequently be denied.

But we come next to consider the merits of the decree. When this case was before us at a previous term, from a decree dismissing the bill, we held, after due consideration of the provisions of the will of William Matherson, and the charges and allegations of the original bill (which, for the purposes of that trial, were considered as true,) that the bill contained equity, and presented upon its face such a case as justified the interference of a court of chancery to compel a discovery; and that, under the facts and circumstances charged, that was the appropriate forum to take an account of the numerous and complicated transactions growing out of the administration of the estate, and to enforce the due execution of the trust assumed by the administrator with the will annexed. Pearson et al. v. Darrington, 18 Ala., 348.

The effect of this bill, conceding it to be well filed, was, to withdraw the administration of the estate from the Orphans' Court, so that more complete justice might be afforded the complainants by its administration in the court of equity.

The supplemental bill charges, that notwithstanding the pendency of this proceeding in chancery, the administrator proceeded to petition the Orphans' Court of Clarke county, and obtained an order from said court for the sale of "fifty negroes, more or less, as the demands of the estate may require," to be sold at public auction for cash. It appears some fifty-seven of the slaves were sold, on the 17th day of July, 1848, all which were purchased by the administrator himself, except three. The bill charges, that "Jacob Pearson, one of the complainants, has been informed, and he fears and believes the information to be true, that the said John Darrington intends either to send the slaves he so pretended to purchase

out of this State and to be sold by him, or to point them out to the sheriff or marshal as his property, and to be sold under execution against him as the security of Mrs. Maria Matherson, the widow of the said William Matherson; either of which actings by the said John Darrington would go to the great wrong, damage and injury of the complainants." The answer, as to the charge of intended removal of the slaves beyond this State, is perfectly silent.

When the settlement of an estate has been removed into chancery by a bill regularly filed, and that court has rightfully taken jurisdiction, as we have already decided the court did in this case, and the defendant has proceeded to answer, and the cause is in progress in the equity forum, pending such proceeding, the administrator proceeds in the Orphans' Court at his peril, and is subject to have his acts reviewed; and any rights which he may acquire by reason of the action of such Orphans' Court, if such rights in anywise come in conflict with, or embarrass the proper administration of the estate in equity, may be divested by the latter court.

The Court of Chancery having rightfully obtained jurisdiction, will not permit either of the parties to oust its jurisdiction, or cripple or embarrass it in the proper exercise of its remedial justice, by any thing they may do in another forum. Applying these principles to the case before us: If the exigencies of this estate were such as to require a sale of the slaves for cash, at an unusual season of the year for selling such property, it was perfectly competent for the court of equity in which this bill was pending to have passed an interlocutory decree, upon the petition of the administrator or of the creditors, for the sale of the slaves; and this, even before an accounting was had as between the administrator and the complainants. But, inasmuch as such relief was not sought in said court, and the aid of the Orphans' Court was invoked, it was the duty of the Chancery Court so to provide, that the slaves purchased by the administrator under the order of the Orphans' Court should be forthcoming to abide the final decision in the cause. Otherwise, should it turn out upon the final hearing that the administrator had funds in his hands, or is properly chargeable with assets sufficient to indemnify him, or that there is any want of good faith in the purchase, the

court would not have it in its power to administer upon these slaves, as they may have been scattered or sold to other persons.

We do not wish to be understood as holding, either that the order under which this sale was made was void, or that the sale of the slaves under it was invalid. We express no opinion upon either, but leave the questions respecting them open for a decision upon the final hearing of the cause by the Chancellor.

All that is necessary for us to decide now is, that it is competent for the Chancellor to vacate the purchase made by the administrator, if it in any wise conflicts with the proper exercise of its remedial justice, is wanting in good faith, or the prices bid by him are not a fair equivalent for the property; and that to preserve its jurisdiction untrammeled, the injunction against the sale or removal of the property should have been continued. If creditors of the estate have obtained judgments against the administrator, the slaves belonging to the estate are of course liable to such judgments, as the injunction does not in any way affect their rights. But if the administrator has paid demands, and seeks to indemnify himself by selling and purchasing the property; or, if he has extinguished demands by giving his individual obligations, which have been reduced to judgments, and he seeks by a purchase of the property to invest himself with the title, so as to make it subject to levy; in either event, the court, which always narrowly scans the acts of trustees by which they attempt to acquire a title to trust effects in opposition to the *cestuis que trust*, should hold the property subject to its control, to abide whatever decision the justice and equity of the case may require to be made on the final hearing. This is alike due to the complainants, who aver that their interests have been injuriously affected, and to the administrator, who is charged with fraud in the acquisition of the title. See Waterman's Eden on Injunctions, 145–6, N. 1; and, as to purchases by trustees, 13 Ala., 681–704; 16 ib., 616–624.

We have looked into the objections taken to the bill, but see no sufficient reason in them for dissolving the injunction. After a careful examination of this case, we feel constrained to hold, that the Chancellor erred in dissolving the interlocu-

tory decree rendered. It is therefore reversed, and a decree here rendered re-instating the injunction.