MOORE *vs.* LESUEUR and WIFE.

[BILL IN EQUITY BY ADMINISTRATOR FOR SETTLEMENT OF ESTATE.]

1. *Jurisdiction of equity over final settlement of decedent's estate.*—The chancery and probate courts having concurrent jurisdiction over the settlement of decedents' estates, the former court will not, in the absence of special equities, take jurisdiction of a final settlement which has been already commenced in the probate court.

2. *Clerical misprision in partial settlement no ground of equitable relief.*—A simple error of calculation in the statement of an account, on a partial settlement had under the act of 1843, (Clay's Digest, 229, § 42,) is amendable in the probate court, *nunc pro tunc*, and constitutes no ground for a resort to equity.

3. *Equitable relief against probate decree.*—An administrator cannot come into equity, to obtain relief against a decree of the orphans' or probate court, on a ground which was available to him as a defense in that court, without showing a sufficient excuse for his failure to make his defense there.

4. *Equitable lien.*—If an administrator grants indulgence to one of the distributees, on a note given for the purchase-money of slaves bought at a sale of the property of the estate, until the statute of limitations has barred a recovery on the note, this gives him no right to come into equity, to establish a lien on the slaves for the unpaid purchase-money.

5. *Contribution by distributee.*—If an administrator voluntarily makes distribution of the assets in his hands, with requiring refunding bonds from the distributees, and without retaining sufficient to pay the outstanding claims against the estate of which he has notice, he cannot afterwards maintain a bill against a distributee for contribution.

APPEAL from the Chancery Court of Marengo.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Thomas J. Moore, as the admin-
istrator of Hardy H. Moore, deceased, and sought to
remove the final settlement of his administration from
the probate court, where it had been commenced, into
the chancery court. The intestate died in September,
1836, leaving his widow, Mrs. Penelope N. Moore, and
their only son, Thomas H. Moore, his sole distributees
and heirs-at-law. In 1841 Thomas H. Moore also died,
leaving his mother his sole distributee and heir-at-law.
Soon after the death of Hardy H. Moore, letters of
administration on his estate were granted to said Thomas
J. Moore. In 1837, at a public sale and hiring of the
slaves belonging to the estate, the widow purchased prop-
erty and hired negroes amounting to $2,535, for which
she executed her note to the administrator. In Decem-
ber, 1840, the slaves belonging to the estate were divided,
by commissioners who had been appointed under an
order of the orphans' court, between the widow (who had
in the meantime married Napoleon B. Lesueur) and the
intestate's only child, Thomas H. Moore. At a partial
settlement, made by the administrator in 1846, he
charged himself with the amount of the note above men-
tioned, which, under some agreement with Lesueur and
wife, he failed to collect. This note was subsequently
the foundation of an action at law, brought by the ad-
ministrator against Lesueur and wife; but the defendants
defeated the suit on the plea of the statute of limita-
tions.—See the report of the case in 18 Ala. 606. These
several matters, in connection with alleged mistakes in
the settlement of 1846, were made the foundation of the
complainant's claim to equitable relief, as will more fully
appear from the briefs of counsel and the opinion of the
court. The defendants filed a joint answer, denying the
material facts on which the equity of the bill was made to
rest, and demurring to the bill for want of equity. On
final hearing, on pleadings and proof, the chancellor dis-

Moore v. Lesueur and Wife.

missed the bill, for want of equity; and his decree is now assigned as error.

I. W. GARROTT, WM. M. BYRD, and LOMAX & PRINCE, for the appellant, made the following points:

1. The proceedings in the probate court, to compel a settlement of the administration, did not deprive the administrator of the right to remove the administration into chancery.—1 Story's Eq. §§ 589, 608; Story's Eq. Pl. § 491; Cherry v. Belcher, 5 S. & P. 133.

2. The mistake committed against the administrator by the probate court, in the partial settlement of 1846, can only be remedied in equity. That settlement, under the act of 1843, has the force and effect of a judgment at law, and can only be corrected in a court of chancery. Duke's Adm'r v. Duke's Distributees, 26 Ala. Rep. 673; Thompson v. Hunt, 22 Ala. 517; Savage v. Benham, 11 Ala. 49. That chancery has jurisdiction to overhaul and correct the decrees of the probate court; and that, when its jurisdiction has attached for one purpose, it will go on and close the litigation, see the following cases: Cowan and Wife v. Jones, 27 Ala. 317; English v. Lane, 1 Porter, 328; Kennedy v. Kennedy, 2 Ala. 572; Stow v. Bozeman's Executors, 29 Ala. 397; 1 Story's Equity, §§ 111, 150; 2 Hayw. 332; 5 J. J. Mar. 241.

3. The bill shows equity, also, in relation to the note for $697 given for the hire of negroes by the Linden Railroad Company. When this note was taken, there was no statute requiring an administrator to take security on notes given for the hire of slaves.—Aikin's Digest, 180, § 13. If the administrator, in taking the note without security, acted in good faith, and with ordinary prudence and diligence, he is not chargeable with the loss of the debt.—Maysville Turnpike Company v. Waters, 6 Dana, 70.

4. A clear case for equitable relief is shown in the matter of the note for $2,535, given by Mrs. Lesueur for the hire and purchase of slaves. The administrator failed in the action at law on this note; he is chargeable with the amount of it on his settlement before the probate court;

and thus the distributee gets the property, and yet charges the administrator with the value of it, unless equity will interfere, and either establish a lien on the property, or compel the distributee to allow the note as a credit. This court intimated, in the action at law, that the administrator might have relief in equity.—Moore v. Lesueur and Wife, 18 Ala. 606; 9 Porter, 664; Crayton v. Johnson, 27 Ala. 503; Douthitt v. Douthitt, 1 Ala. 594; 1 Story's Equity, § 184, 257, 527.

5. The bill may be maintained for the purpose of recovering contribution from the distributees.—Alexander v. Fisher, 18 Ala. 374; Jones & Connor v. Jemison, 4 Ala. 632; Buford v. Rawling's Ex's, 5 Dana, 285; 4 Munf. 219; 3 Leigh, 450.

Wm. M. Brooks, contra, contended that the bill was wanting in equity, on the following grounds:

1. That the jurisdiction of the probate court, being concurrent with that of the chancery court, and having first attached, could not be divested, unless special equitable circumstances were shown.—Horton v. Mosely, 17 Ala. 794; Gould v. Hays, 19 Ala. 438; Pharis v. Leachman, 20 Ala. R. 662; Pearson v. Darrington, 21 Ala. R. 169; 9 Wheaton, 532; 3 Yerger, 167; 5 How. (Miss.) 80; 1 Edw. Ch. 551; 2 Stew. & P. 9.

2. That the mistake in the settlement of 1846 did not give chancery jurisdiction, because, if not now amendable in the probate court, it was a matter which was available to the administrator when the settlement was made, and no reason was shown why he did not then have it corrected. Evans v. Bolling, 5 Ala. 551; Lambkin v. Reese, 7 Ala. 171; Beck v. Simmons, 7 Ala. 71; 2 Porter, 262; Reynolds v. Dothard, 7 Ala. 666; French v. Garner, 7 Porter, 549; Mock v. Cundiff, 6 Porter, 24; Bibb v. McKinley, 6 Porter, 636; Thomas v. Tappan, 1 Freeman's Ch. 472; 1 Sm. & Mar. 238.

3. That the note for $2,535, being barred by the statute of limitations at law, could not be made available for any purpose in equity.—5 J. J. Mar. 84.

STONE, J.—The view most favorable to complainant which can be entertained, must concede that, in the absence of special equities, the court of probate and the court of chancery have concurrent jurisdiction of the settlement of administrations. In such case, the tribunal which first takes cognizance of the matter in controversy, will retain it to the exclusion of the other.—Harrison v. Harrison, 9 Ala. 479; King v. Smith, 15 Ala. 269; Nelson .v. Dunn, 15 Ala. 514; Horton v. Mosely, 17 Ala. 794; Gould v. Hayes, 19 Ala. 438; Smith v. McIver, 9 Wheat. 532; Pharis v. Leachman, 20 Ala. 662; Pearson v. Darrington, 21 Ala. 169.

In this case, the probate court had taken cognizance of the final settlement—had made several orders in the cause; and unless it is made to appear that that court can not administer adequate and complete relief between the parties, the bill in this case must be dismissed.

The grounds on which the equity of this bill is rested, are four:

1. The bill avers, and the averment is not denied, that in making a partial settlement of complainant's administration in 1846, the then judge of the orphans' court committed an error in the addition of the credit column of the account-current, by which complainant was injured five hundred dollars, besides interest. Looking into the account-current, we find this averment to be true. The settlement of 1846 was made under the act of 1843, (Clay's Digest, 229, § 42,) which declares that such settlements, and decrees thereon, " have the force and effect of a judgment at common law."

It is here contended that, inasmuch as the said error of $500 was committed in the said settlement made under the act of 1843, the orphans' court of Marengo, and its successor, the probate court, had no authority to correct that error, because the decree had the force and effect of a judgment at common law.

In Duke v. Duke, 26 Ala. 673, this court said : " Without intending to decide that annual or partial settlements may not be inquired into and corrected, as to any and all items which were not litigated when they were made, we

feel quite sure that, when such settlement was made under the act of 1843, and all the parties were duly brought before the court, and an issue respecting the validity of certain items of the account was made and fully tried by the parties before the court, the judgment given upon these items, either allowing or rejecting them, so long as it remains unreversed, must be of force, and as conclusive as if rendered upon the final hearing."—See, also, Savage v. Benham, 11 Ala. 49 ; Thompson v. Hunt, 22 Ala. Rep. 517.

We have no disposition to question the correctness of these decisions ; but, on the contrary, fully approve of them. The cases of Savage v. Benham, and Thompson v. Hunt, asserted the simple proposition, that partial settlements, made under and pursuant to the act of 1843, have so far the force and effect of judgments, that they will support a writ of error. The case of Duke v. Duke decides, that when "an issue respecting the validity of certain items of the account" is made up and tried, the judgment given upon these items, so long as it remains unreversed, is as conclusive as if rendered on the final hearing. The item of $500 in this record is not within the letter of the decision in Duke v. Duke, because no issue was made up respecting its validity.

We prefer, however, to rest our decision upon another principle. The account-current on which the settlement was had in 1846, though technically not a part of the record which could have been considered on writ of error, (see Williams v. Gunter, 28 Ala. 681,) was nevertheless an office paper in the cause, filed of record, and the basis of the decree pronounced. The account was passed upon, audited, and, in many important particulars, re-stated by the orphans' court. It appears, also, to have been certified at the time, by the judge ot the orphans' court, as "a true statement of the account of Thomas J. Moore, administrator of the estate of H. H. Moore, deceased, and settled before me [the judge] June term of the orphans' court, Marengo county, 1846."

In the decree rendered is the following language, immediately succeeding the statement of the amount found

in the administrator's hands, and which amount corresponds with the amount shown by the account-current: "It is-adjudged, ordered and decreed, that said account, so stated as aforesaid, be allowed and entered of record, as a settlement of said estate, to the present term of the court." The error of $500 was purely clerical, on which the judicial mind had not pronounced. The orphans' court had in its files in that cause record evidence of the error and its extent, sufficient to justify a correction of that error, *nunc pro tunc*. We do not doubt the power of that court to have made the correction.—Wainwright v. Sanders, 20 Ala. 605; Yonge v. Broxson, 23 Ala. 684; Dickens v. Bush, 23 Ala. 849; Williams v. The State, 29 Ala. 9; State, *ex rel.* v. Mayor, &c., 24 Ala. 701.

Without noticing any other objection to the equity of complainant's bill, as the same is made to rest on the error of calculation, we are satisfied the bill cannot be maintained on this ground.—Chandler v. Faulkner, 5 Ala. 567; Faulkner v. Chandler, 11 Ala. 725; Perrine v. Carlisle, 19 Ala. 686; Minter v. Branch Bank of Mobile, 23 Ala. 762; Long v. Brown, 4 Ala. 662; Williams v. Mitchell, 30 Ala. 299.

2. The fact that the orphans' court charged the complainant with the hire of slaves, which was lost by the insolvency of the Linden rail-road, is the second special equity relied on. If it be true, as contended, (which we do not admit,) that administrators, hiring out the property of their intestates, at the time this was hired out, were not required to take security, the principal being reputed solvent, then this defense was available to the administrator on the settlement in the orphans' court. He offers no excuse why he did not make his defense there. French v. Garner, 7 Porter, 549; Reynolds v. Dothard, 7 Ala. 666; Allman v. Owen, 31 Ala. 167, and authorities cited; Thomas v. Tappan, 1 Freeman's Ch. 472.

3. The third ground relied on relates to the note for $2,535, given by Mrs. Lesueur for the purchase and hire of slaves. The bill charges, that the administrator indulged the maker of the note, at her request or that of her husband, until it was barred by the statute of limit-

ations. Further, that there was an agreement to allow said note as a payment or set-off on the final settlement of the estate. The answers expressly deny both of those charges; and the evidence is wholly insufficient to overturn these positive denials in the answer. In truth, the same evidence, in substance, was given on the trial at law in the circuit court; and this court held, that it did not remove the bar of the statute of limitations.—See Moore v. Lesueur, 18 Ala. 606. This feature of the bill, then, rests on the naked proposition, that the note was given as the purchase-money and hire of slaves; that the promisor enjoyed the benefit of the consideration; and because the cause of action, as a legal liability, is barred by the statute of limitations, chancery is asked, in the absence of any contract for that purpose, to establish a lien on the slaves for the unpaid purchase-money. No authorities have been cited, or found by us, which support this proposition; and hence we hold, that the bill cannot be upheld on this ground.—Standefer v. McWhorter, 1 Stew. 532; Bibb v. McKinley, 6 Por. 636.

4. We are asked to entertain this bill as one for contribution from Mrs. Lesueur, the distributee; the administrator alleging, he has not in his hands sufficient assets to reimburse himself for payments which he has made as administrator. Intestate died, and the administrator was appointed, in 1836. In 1840, the slaves belonging to the intestate were divided and allotted to Mrs. Lesueur and her infant child, since dead. The bill avers, that said division was made under an order of the orphans' court; but it is not averred at whose instance that order was obtained, or whether with or without the assent of the administrator. The order itself, which is nothing more than the appointment of commissioners, is silent on this question. Neither is it any where averred or shown that the administrator did not have full knowledge of the liabilities of the estate, when the distribution took place. The length of time—four years—which elapsed between the appointment of the administrator and the distribution of the slaves, together with other circumstances shown in the record, prove almost or quite conclusively that he did

know the condition of the estate and its debts, when the division and distribution took place.

The averments of the bill which bear on this question are the following:

"That afterwards, on the 28th December, A. D. 1840, the negro slaves belonging to said estate were divided between the said Penelope N. and Thomas H., as will more fully appear by reference to a copy of the division made under an order of said orphans' court, herewith filed," &c.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"That since said partial settlement, your orator has paid off the indebtedness of said estate, which amounted to a larger sum than the moneys he has received of said estate, or the value of the assets which remained in his hands after the division of the negroes aforesaid, as will more fully appear by reference to his account for final settlement of said estate, herewith filed and marked exhibit C, and prayed to be taken as a part of this bill; and that the balance of said indebtedness your orator has advanced out of his own means; and that the only property out of which he can be reimbursed the advancement made by him as aforesaid, is that mentioned in exhibit A, being the negroes which were divided between the said Penelope N. and Thomas H., and which went into their possession upon such division; and which are now in the possession of said Napoleon B., as husband or as trustee aforesaid, and have largely increased in number since said division."

Exhibit C tends to show, if true, that the administrator, after obtaining a credit for the $500 and interest, erroneously charged against him, will not have in his hands sufficient funds of the estate to reimburse himself for payments which he claims to have made. Some of those payments are charged to have been made by him wrongfully and by collusion. We will not, in this opinion, undertake to pronounce on this question, because it is not now before us. The question arises, are the above averments sufficient to uphold a claim for contribution?

In Alexander v. Fisher, 18 Ala. 374, intestate had died

Moore v. Lesueur and Wife.

in December, and the property was consentively distributed in January following. Subsequently a judgment for some $13,000 was recovered against the administrator, on notes which, it was alleged, intestate had signed as the surety of another. Administrator had interposed the plea of *non est factum* to these notes, but a recovery was had on the testimony of the principal maker of the notes. The administrator had not in his hands sufficient assets to reimburse himself for the payment of this judgment, and this bill was filed against the widow to compel contribution; the other distributees having severally paid their proportion. The claim was resisted, on the ground that the administrator had voluntarily distributed the property, without requiring refunding bonds from the distributees; and on the further ground, that the administrator, before making distribution, had notice of the claim on which a recovery was afterwards had against him. This court granted him relief.

On the first ground, this court, after alluding to the fact of the early division, and the advantages accruing therefrom to the distributees, added, "The administrator has acted in good faith. There has been on his part no fraud or collusion; but, if he has been at all in fault, his error consisted in not requiring refunding bonds before making distribution; but even this may find some apology in the liberal confidence, which may have presumed to have obtained between members of the same family, with respect to their common property, and the charges and burdens to which it was subject." In another place, the court, after characterizing the rule in cases like this as *harsh and stringent*, had said, the administrator was "influenced by a desire to aid the distributees; and, without any motive personal to himself, had divided the property, without a *full knowledge* of the condition of the estate with respect to the debts due from it."

On the question of notice, this court said, "We grant, the evidence shows he [the administrator] had some notice of the existence of the notes due to the branch bank and others, for which the intestate's estate, it seems, has been made liable by suit; but we think it very clear, that he

was not fully advised upon that subject. He was acquainted with the peculiarities of his father, his caution, his repugnance to going in debt, his inability to write his name; whereas the notes, for the payment of which the estate has been charged, were for near ten thousand dollars, and purported to be signed by him as security for one who was notoriously insolvent. Besides, they appear to have been signed by one who could write, and the administrator knew that his intestate signed by making his mark. All these facts taken together, we think, will satisfy any reasonable mind, that the administrator did not believe that these were the notes of his intestate, and that the circumstances fully warranted his incredulity."

True, our predecessors, in the case of Alexander v. Fisher, quoted without dissent certain expressions which are found in the Virginia cases of Bonner v. Glendenning, 4 Munf. 219, and Gallega v. Attorney-General, 3 Leigh, 450; which expressions tend to rest the administrator's right to recover contribution on the absence of fraud and collusion. What was quoted, however, from the two Virginia cases, was not necessary to a decision of the questions which this court was considering; and even the court of appeals of Virginia do not feel themselves bound by those principles.

In the case of Davis v. Newman, 2 Robinson's Virginia Rep. 664, the court reviewed the cases cited above, and other decisions of that court. This case was decided in 1844, long after the decisions quoted from 4 Munford and 3 Leigh. The court said, "But, as between the executor and the legatee who has been paid, the cases are decisive that he shall not recover back the payment, if voluntarily made."

The case in 2 Robinson was, in many of its features, very like the one we are considering. Still it was ruled that the executor could not recover.

Our own court, in the case of Alexander v. Fisher, "conceded, as a general rule, that if an executor or administrator, with a *knowledge* of the existence of demands against the estate, pay out legacies, or make distribution of the assets, he cannot recover back from the legatees or

the distributees, to whom he has thus turned over the effects, anything for his own indemnity, unless he has obtained from them refunding bonds. If, with such knowledge, he submits to pay legacies, or distribute the property, the persons receiving the same have the right to regard it and treat it as their own. It is given to them absolutely, and closes the transaction between them and the administrator."

In thus laying down the doctrine, our court but affirmed the general rule of law upon the subject; the rule which has prevailed, *as a general rule*, for more than one hundred years.—See Edwards v. Freeman, 2 Pr. Williams, 435, 447. Mr. Story, in his commentaries on Equity Jurisprudence, (§ 90,) says: " In the course of administration of estates, executors and administrators often pay debts and legacies upon the entire confidence, that the assets are sufficient for all purposes. It may turn out, from unexpected occurrences, or from debts and claims made known at a subsequent time, that there is a deficiency of assets. Under such circumstances, they may be entitled to no relief at law. But in a court of equity, if they have acted with good faith, and with due caution, they will be clearly entitled to it, upon the ground, that otherwise they will be innocently subject to an unjust loss, from what the law itself deems an accident."—See, also, 2 Lomax on Executors, 296–7–8, and notes to the two authors.

It is obvious, then, that under this rule, to entitle the representative to be reimbursed, the payment must be made in the *confidence* that the assets will be sufficient for all purposes; and that the deficiency is shown by *unexpected occurrences*, or by debts and claims made known *at a subsequent time*. In the case of Alexander v. Fisher, *supra*, this court held that, under the circumstances then disclosed, the administrator had brought himself within the influence of the exceptional rule, and that consequently he was entitled to recover.

In the present case, it is not even averred, that when the slaves were distributed, the administrator was ignorant of his intestate's liabilities, or the extent of them;

that he believed the assets retained by him would be sufficient to meet the debts; or, that any unexpected occurrences, or debts subsequently made known, have shed any new light on the condition of the estate. The claim to relief rests on the naked averment, "that since said partial settlement, your orator has paid off the indebtedness of said estate, which amounted to a larger sum than the moneys he has received of said estate, or the value of the assets which remained in his hands after the division of the negroes aforesaid." The proof, as we have said above, not only fails to show confidence disappointed, but tends strongly to convince us that the administrator, when the slaves were divided, *knew* of the liabilities of the estate. Under such circumstances, he can claim no relief on this feature of the bill.

The decree of the chancellor is affirmed.