## SHANNON vs. REESE.

[BILL IN EQUITY FOR INJUNCTION OF JUDGMENT AT LAW.]

1. *Equitable relief against judgment at law, on ground of fraud or surprise.*—In an action on an open account, due to the plaintiff from the defendant's intestate, a verdict and judgment having been rendered against the plaintiff, for the amount due on a promissory note, which was offered in evidence under the pleas of payment and set-off, he cannot enjoin the judgment in equity, by showing that the note was given for the price of property bought by him from the defendant as administrator; that the defendant objected to allowing the price of the property to be credited on the plaintiff's account against the intestate, because he insisted that the account was too large, and ought to be settled by a lawsuit, and said that, if plaintiff would give his note for the amount, he would use it as a set-off, *pro tanto*, against the account; that in a subsequent conversation, between the plaintiff's attorney and the defendant, pending the action, the defendant repeated this objection to the account, but urged no other objection to it; that on the trial his counsel insisted before the court and jury, in his presence, that the note, being of later date, was *prima-facie* evidence that the account had been settled, and that the court so instructed the jury.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon JAMES B. CLARK.

THE bill in this case was filed by John H. Shannon, against Andrew J. Reese, as the administrator of Freeman B. King, deceased, for the purpose of enjoining a judgment at law, which said administrator had recovered against said Shannon. The action at law, in which said judgment was rendered, was brought by Shannon against Reese, as the

administrator of King; and was founded on an open account, alleged to be due and owing from the intestate to the plaintiff, in December, 1856, for work and labor done, and for the hire of two slaves, amounting to the aggregate sum of $1120. The defendant pleaded, in short by consent, *non assumpsit*, payment, and set-off; and issue was joined on these pleas. On the trial, the defendant offered in evidence, under the pleas of payment and set-off, a promissory note for $554 71, executed by the plaintiff, dated the 9th February, 1857, and payable one day after date, to the defendant, as the administrator of said King; and his counsel insisted, before the court and jury, that the note, being of later date than the account, was *prima-facie* evidence that the account was settled when the note was given. The court sustained this position, and instructed the jury accordingly; and the jury having thereupon returned a verdict for the defendant, for the amount of the note and interest, judgment was rendered against the plaintiff on the verdict.

The bill alleged, as grounds of relief against this judgment, that the account was not settled when the note was given; that the note was given in part payment of the purchase-money of two slaves, bought by the plaintiff from the defendant as such administrator; that the balance of the purchase-money was paid by the surrender of two promissory notes held by the plaintiff against the intestate; that the plaintiff desired and proposed, at the time of the purchase, instead of giving his note for the excess of the purchase-money above the amount due on these notes, to enter that sum as a credit on his account against the intestate; that the defendant objected to doing this, "because he thought said account was too large, and ought to be settled by law, and said that King's estate might prove insolvent, and that the note should be taken in part payment of whatever judgment might be obtained by plaintiff upon said account;" that afterwards, pending the action on the account, defendant told John A. Lodor, one of plaintiff's counsel, "that said account was too large—that plain-

tiff had charged said intestate, in that account and another, with more days' work than there were working days in the year, and had also improperly charged him with the hire of a negro girl;" that defendant did not, either then or at any other time, "raise any other objection to said account, or say or pretend that it had been settled by him;" "that this course of conduct on the part of the defendant induced plaintiff and his counsel, very reasonably, to suppose that, on the trial of said action, there would be no other controversy than in reference to the justness of said account;" "that plaintiff being always willing to allow said note as a set-off, and defendant being notified of that fact by plaintiff's counsel, induced plaintiff and his counsel not to summon as a witness Dr. E. M. Vasser, who could have proved the consideration of said note;" that plaintiff and his counsel, "knowing the existence of the foregoing facts, were surprised and astonished when, on the trial, the defendant took the position, that said note was *prima-facie* evidence of a settlement of all accounts;" that this conduct on the part of the defendant was fraudulent and unconscionable; that the defendant was personally present at the trial, and heard the verdict of the jury rendered in his favor, and made no effort to correct it; and that afterwards, on the evening of the same day, he confessed to S. M. Hill his surprise at the verdict, and said that he only expected that the note would be allowed as a set-off against the account.

The defendant demurred to the bill, for want of equity, and filed an answer, the material part of which is embraced in the following extract: "Respondent admits, that said note was given for the amount which the price of said negroes, bought by plaintiff from respondent, exceeded the amount due on the two notes held by plaintiff against said intestate; also, that plaintiff's said account, on which said action was founded, was not included in said settlement had in February, 1857, and that it has never been paid. He admits, also, that he refused to credit said account with the amount for which said note was given, and that he probably gave as his reasons for doing so, 'that he thought

Shannon v. Reese.

the account too large, and should be settled by a lawsuit, and that he would use the note as a set-off in the action; but he denies that he ever agreed that the note should be taken or used as a part payment of the judgment which the plaintiff might recover on the account. Respondent did have a conversation with John A. Lodor, but cannot now recollect its precise terms; it may have been as stated in the bill. But respondent denies that he ever admitted the correctness of said account, either directly or by implication, to said Lodor or the plaintiff, or agreed to pay it, or to waive any defense to it; and he expressly denies that he ever said or did any thing with the intention of misleading the plaintiff or his counsel, or putting them off their guard, or with a view to get any advantage over them or either of them. He did not then, and does not now, know the correctness of said account; but firmly believed then, as he does now, that a great part of it is unjust, and not really due; and that on a strict accounting between plaintiff and the estate of said King, for services actually rendered, the amount due from plaintiff to said estate would be much larger than the amount of said note. Having this belief, when said suit was brought against him, this respondent considered it his duty as administrator to defend it; and he employed counsel for that purpose, and told them what he knew and believed about said account, and instructed them to make the best defense they could under all the circumstances; but respondent never instructed them to take the position, that the note was *prima-facie* evidence of a settlement or payment of the account, and it never occurred to him that that position could be taken, until he heard his counsel make the point on the trial. Respondent was present when the verdict was rendered in his favor, and was surprised at his gaining the case,—not because he believed that the plaintiff was entitled to a verdict, but because this respondent was unable to show the true state of accounts between the parties; and it is probable that he expressed his agreeable surprise to Col. S. M. Hill, or some other friend, though he does not recollect the pre-

cise language used. And this respondent utterly denies that he has ever done any act, or uttered any word, fraudulently, or with the intent to mislead, surprise, or astonish the plaintiff or his counsel."

The complainant took the depositions of Jno. A. Lodor, and S. M. Hill. The latter testified to an admission by the defendant, made some time after the commencement of the plaintiff's suit against him on the account, (but he could not recollect whether it was before or after the trial of the cause,) to the effect "that he considered a part of the claim just, and a part unjust; that he was willing to pay all he thought was right and proper, but, as suit had been brought against him, plaintiff would have to do the best he could; or something to that effect." Lodor testified as follows: "I had a conversation with the defendant, in reference to the plaintiff's account against the estate of F. B. King, on or about the 22d May, 1858. Said account was then in the hands of Gayle & Lodor for collection, and suit had been brought on it against the defendant, as the administrator of said King. In that conversation, I alluded to a letter which I had then recently written to him on the subject, but to which he had not replied; and I mentioned to him that I had been instructed by the plaintiff to receive in part payment of said account, a note for five or six hundred dollars, which plaintiff had previously given to him as administrator. The defendant refused to make the settlement, alleging, as a reason therefor, that plaintiff had charged in his account for more time than he could have been employed for said King; that by comparing said account against said F. B. King' estate with another account which plaintiff had against the estate of one Benjamin King, it appeared that he had charged for more working days than there were in the year; also, that plaintiff's account was wrong in another respect, because it contained an item for the hire of a negro named Louisa, when said King had a sufficient number of house servants, and did not hire said girl, though she was allowed to stay at his house. These were the only objections made by the

defendant to said account.  Being desirous to effect a settlement of the matter, I proposed to him to correct any errors that might exist in said account, and stated that, if he and plaintiff would meet and converse in reference to it, plaintiff might be able to satisfy him that it was correct; and I proposed that such a meeting should take place. Defendant readily assented to the proposal, and a day was appointed; but he failed to appear at the time.  I saw him afterwards, and he made some excuse for failing to be present at the appointed time; and he spoke as though he would be hard to satisfy as to the correctness of the plaintiff's account in the items objected to.  From the tenor of his whole conversation, the impression was created on my mind, that these objections were the only obstacles to a settlement of the account; and that, if they could be removed, or explained satisfactorily to him, a settlement could be effected.  The first conversation, above alluded to, was had after the suit had been brought on the account; the account was shown to the defendant, and was examined by him; and no other objection was made to it than those above mentioned.  From the said conversations and interviews I had with the defendant, the impression was created, that the said objections urged by him were the only reasons that prevented a settlement, and the only points on which he desired to be better satisfied; and I was surprised when, on the trial of the cause, it was contended by his counsel that the note, being dated subsequent to the maturity of said account, was evidence of a settlement of all accounts between the parties, and was for a balance found due on such settlement.  This view of the case was never presented or suggested in any of the conversations between the defendant and myself.  At the same time, I knew that an appearance had been entered for the defendant, and that the case would be litigated; and I expected that his counsel would use, as every lawyer does, all proper means to gain the cause; but I did not expect that any such use would be made of the note, and was misled by believing, from said conversation with the defendant, that the defense

would be limited to the objections urged by him; and hence, in the preparation of the cause for trial, and on the trial, plaintiff's counsel confined their efforts to an establishment of the correctness of the account."

The chancellor overruled the demurrer to the bill, and refused to dissolve the injunction on the answer; but, on the final hearing, on pleadings and proof, he intimated that his former opinion was wrong, and dismissed the bill; and his decree is here assigned as error.

GEO. W. GAYLE, and D. W. BAINE, for appellant.

STONE, J.—We can not perceive, in this record, the slightest evidence that Mr. Reese perpetrated any fraud against the rights of Mr. Shannon. The conversation which he held with Mr. Shannon's attorney, seems to have been at the attorney's instance; and in that conversation, he seems to have given, fairly and honestly, the reasons which, as we can very readily suppose, influenced him in refusing to pay Mr. Shannon's demand, until its justice should be established. It does not appear that Mr. Reese asserted any falsehood, or that he even suppressed any material fact of which he had knowledge. True, he did not inform the attorney of the legal presumption which was afterwards successfully invoked for him on the trial; but it does not appear that he knew of such legal principle, nor, indeed, that he had employed an attorney, at the time he held the conversation. He did no more than urge objections to the account, which he probably believed were well taken.

On the other hand, the plaintiff, Shannon, knew that he executed the note to Reese; and before he entered upon the trial, he probably knew that note would be used in defense; for the plea of set-off was interposed.

The question made by the record is simply this: A defendant administrator is sued on a claim, which he declares to be unjust. On the trial, his counsel avails himself of a legal presumption, and thereby defeats the plaintiff's recovery; the plaintiff, if he had anticipated the use to be

made of *this known fact,* having it in his power to procure
and produce other evidence which would repel the legal
presumption.   He foregoes his right to take a voluntary
nonsuit, but suffers a verdict and judgment to go against
him ; and fails to move for a new trial on the ground of the
surprise he complains of.   These facts do not amount to
an impeachment of the justice of the judgment, " on
grounds of which the defendant could not have availed
himself" [in the court of law,] " or was prevented from do-
ing so by fraud, or accident, or the act of the opposite party,
unmixed with negligence or fault on his part."—*French v.
Garner,* 7 Por. 553 ; *Allman v. Owen,* 31 Ala. 167 ; *Moore
v. Lesueur,* 33 Ala. 243; *Thomas v. Tappan,* 1 Free. Ch. 472.

Decree affirmed.