# GRACE vs. MARTIN.

[ACTION AT LAW AGAINST SURETY OF ADMINISTRATOR ON BOND EXECUTED DURING THE WAR.]

1. *Statute of non-claim suspended during the war.*—The statute of non-claim was suspended in this State from the 11th day of January, 1861, to the 21st day of September, 1865.

2. *Judgment nil dicit against administrator and execution returned nulla bona, conclusive against surety.*—An execution *de bonis intestatis* upon a judgment rendered against an administrator, returned "no property," is conclusive evidence of assets or a *devastavit* against the sureties of the administrator, in a suit upon the administration bond.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before Hon. W. S. MUDD.

The administrator of Peter Martin, deceased, on the 25th of March, 1867, suffered a judgment *nil dicit* to be rendered against him as such administrator on a note executed by his intestate and himself, and payable January 1, 1861: An execution *de bonis intestatis* was duly issued on this judgment, and on July 22d, 1868, was returned "No property found." Thereupon this action was brought against appellee as one of the sureties of the administrator on his bond. The proof showed that said bond was executed by appellee as such surety on the 31st day of December, 1862, and approved by the judge of probate of Tuskaloosa county on that day ; that on the same day letters of administration on said estate were granted to the principal in said bond, and after the expiration of eighteen months (but during the war, all the debts against the estate having been paid, except the note here sued on,) the heirs of the estate distributed the property among themselves without any order or proceeding of court authorizing it. It does not appear that the heirs-at-law were of age at the time of the distribution, the record being entirely silent as

to that point. The surety proved that no assets came into
the hands of the administrator after the distribution, nor
had he any assets in his hands at the time of the rendition
of judgment. The note here sued on was not presented
for payment until after the distribution aforesaid; but was
presented in the latter part of 1865 or in January, 1866,
and was filed in the office of the judge of probate as a
claim against said estate in January or February, 1866.

The court charged the jury that, "If the jury shall be-
lieve from the evidence that letters of administration were
duly issued by the probate court of Tuskaloosa county to
J. L. Martin as administrator of the estate of Peter Martin,
deceased, on the 31st day of December, 1862, and that all
the debts against the estate of Peter Martin, deceased,
were paid, except the note on which the judgment was
rendered in the circuit court of Tuskaloosa county in favor
of Francis M. Grace and his wife, Mary J. Grace, for
$1,684 28, as stated in plaintiff's complaint; and if they
shall further believe that said note on which said judgment
was rendered had not been presented to the administrator
aforesaid within eighteen months after the grant of letters
of administration as aforesaid, then the heirs of said estate
had the right, at any time, after the expiration of eighteen
months, to divide and distribute the property of said estate
among themselves without any order of the probate court
for that purpose; and if said division and distribution did
take place between said heirs after the said eighteen
months had expired, and no assets had come to the
hands of said administrator since said division and distri-
bution, and that none were in his hands at the time the
suit was brought on the note against J. L. Martin, as ad-
ministrator as aforesaid, or at the time judgment was ren-
dered thereon, that then the plaintiff cannot recover in this
action;" to which charge the plaintiff (appellant) excepted.

The plaintiff (appellant) then requested the court to
charge the jury that the suffering of the judgment to be
rendered against him by J. L. Martin, as administrator of
the estate of Peter Martin, deceased, was an admission of
assets in his hands sufficient to satisfy said judgment

which is binding, not only on said J. L. Martin, but on his sureties also," which charge the court refused to give, and plaintiff excepted.

The jury, under the charge of the court, found a verdict for the defendant. The errors now assigned are, 1st. The charge given; and 2d. Refusing to give the charge requested.

HARGROVE & FITTS, for appellant.—The claim against the estate of Peter Martin was not barred by the statute of non-claim, for that statute was suspended until the 21st of September, 1865.—Ord. Const. Conv., Rev. Code, p. 53, Ord. 5, § 2; and that ordinance was not repealed until after rendition of judgment on said claim on 25th March, 1867. Moreover, there was no legal court, from said intestate's death until 1865, in which the people of the State were compelled to have their causes adjudicated.—*Coleman v. Holmes*, 44 Ala. 134. And how could a claim be filed (as provided in section 2241 of the Rev. Code) in the office of the judge of probate, when there was no legal judge of probate? Nor was there any legal administrator during that period to whom creditors were *required* to present their claims.—*Bibb & Falconer v. Avery, Adm'x*, 45 Ala. 691.

But the plea of non-claim, *plene administravit, ne unques administrator*, distribution among the heirs, or any other such plea, comes too late for the surety, when the administrator has suffered judgment *nil dicit* to be rendered against him as such administrator. That judgment is a legal ascertainment of assets sufficient to satisfy plaintiff's demand, and it estops the administrator and his sureties on his bond from denying it afterwards.—*Watts v. Gayle*, 20 Ala. 825; *Lamkin v. Heyer*, 19 Ala. 228; *Holley v. Acre*, 23 Ala. 603; *Kyle v. Mays, use, &c.*, 22 Ala. 692; *Stovall v. Banks*, 10 Wall. 588. Hence, section 2278 of the Revised Code has no application here.

The record must show that the heirs at law were adults, or the distribution was not legal.—*Perryman v. Gue*, 39 Ala. 133; *Carter v. Owens*, 41 Ala. 217.

10

The charge asked should have been given. It was a clear, legal proposition, and not abstract.— *Watts v. Gayle,* 20 Ala. 825, and authorities cited above.

J. M. MARTIN, and SOMERVILLE & MCEACHIN, *contra.*

B. F. SAFFOLD, J.—The appellant, as a creditor of the estate of Peter Martin, deceased, recovered a judgment *nil dicit* against his administrator, upon which an execution *de bonis intestatis* was returned "no property found." He then brought this suit upon the administration bond against the appellee as surety.

The court charged the jury, that if the note on which the judgment against the administrator was obtained was not presented to him within eighteen months after the grant of letters of administration, and the heirs of the said estate had, after that time, distributed the property among themselves, without any order or proceeding to that effect from the probate court, and that the administrator had received no assets since that distribution, when the suit was brought, and the judgment obtained against him, the plaintiff could not recover against this defendant.

The substance of this charge, as shown by the bill of exceptions, is, that the plaintiff's demand was barred by the statute of non-claim, because it was not presented to the administrator within eighteen months from the 31st of December, 1862, when letters of administration were granted to him. It was presented in the latter part of 1865, or in January, 1866.

The statute of non-claim, like the statute of limitations, was suspended in this State from the 11th of January, 1861, to the 21st of September, 1865. This decision accords with the theory of the decision in *Bibb & Falkner v. Avery,* 45 Ala. 691, with the legislation of the State during the late war, (Acts of 1862,) with ordinance No. 5 of the convention of 1865, and with the decision in *Coleman v. Holmes,* 44 Ala. 124. This being the case, the above charge was erroneous.

The charge asked by the plaintiff, that the recovery of

the judgment against the administrator was a finding of assets in his hands sufficient to pay the judgment binding on his sureties as well as himself, asserted a correct proposition. *Amason v. Nash*, 24 Ala. 279, and other authorities in our reports which seem to be in opposition, are based upon a statute passed in 1826, and found in Clay's Digest, 228, § 34, as follows: "No security for an executor or administrator shall be chargeable beyond the assets of the testator or intestate, on account of any omission or mistake in pleading of the executor or administrator." The Revised Code does not contain any such provision, but by section 2282 an execution *de bonis propriis* is authorized, whenever one is returned "no property" on a judgment rendered against the administrator, as such, in the circuit court. Section 2278 limits his individual responsibility to the amount of assets which have come into his hands, or which have been lost, destroyed, wasted, injured, depreciated, or not collected, by want of diligence on his part, or an abuse of his trust. In all of these cases his sureties are liable, and the extent of their liability to a creditor of the estate is ascertained whenever he entitles himself to an execution against the administrator personally. The administrator is enabled to prevent the rendition of a judgment against him by reporting the estate insolvent to the court specially authorized to determine that issue, or by appropriate pleading. By the common law, an inquiry whether the administrator had committed a *devastavit* or not, either by an action of debt suggesting a *devastavit*, or other proceeding, resulted in an execution *de bonis propriis*, when found against him.

This liability of an administrator to an execution against him personally, seems to be the test of some dereliction of duty, as well under the common law as our statutes, which the bond required by our law was intended to provide against.

The judgment is reversed, and the cause remanded:

[NOTE BY REPORTER.—At a subsequent day of the term the appellee's counsel, Messrs. J. M. Martin, and Somer-

ville & McEachin, applied for a re-hearing, and in support thereof filed the following argument:]

The evidence shows that J. L. Martin, if ever the administrator of Peter Martin, deceased, was such administrator by the grant of letters of a court of probate not now recognized as a court of probate of the State of Alabama; and, therefore, said Martin was, if administrator at all, at most but a foreign administrator; and that he and his sureties are, and be liable, only as parties to a foreign administration. In *Bibb & Falkner, ex'rs, v. Avery, adm'r,* in concluding a similar recital of facts, PECK, C. J., uses the following language : "For these reasons it is, that the judgments and judicial acts of its courts can stand upon no higher grounds than the judgments and judicial acts of foreign courts" (see p. 693) ; and again, on page 694 the same learned Justice observes, "They certainly were not the judgments and judicial acts of the courts of one of the United States." Again, on page 694, *supra,* we find the following language : " The admitted doctrine, both in England and this country, is, that a foreign executor or administrator can not maintain an action in the courts in either country, in virtue of his foreign letters testamentary or of administration. New letters must be taken out, and new security given, according to the rules of law prescribed in the country or jurisdiction where the suit is brought." And again, on said page 694 the following language is employed : "Usually such new letters are held to be ancillary merely, but under the peculiar circumstances attending such cases, at present, they should be regarded as original." Now, we submit, if J. L. Martin, the administrator aforesaid, could not have maintained an action in the circuit court of Tuskaloosa on the 25th day of March, 1867, the day of the date of the judgment in favor of F. M. Grace, the appellant in this action, against said J. L. Martin, administrator, &c., how could a judgment obtained against him, as administrator as aforesaid, be conclusive of assets in the hands of said Martin, as administrator as aforesaid, in an action against L. V. B. Martin, (appellee

in this action,) in a certain suit, (the one which originated this appeal,) in which he was sued as one of the sureties upon what purported to be a bond, and which, if in truth a bond, was the bond of a foreign administrator? How, indeed, could the action be maintained against appellee, as surety upon said bond? But if that action was properly entertained, we then make respectful inquiry of this court, why it is "new letters must be taken out and new security given, according to the rules of law prescribed in the country or jurisdiction where the suit is brought"? We ask, if security be required because of the probability of assets coming to the hands, thereby, of the administrator, how is it, and why is it, that the foreign administrator's foreign surety is to be dealt with, and held liable for the acts of his principal in a foreign jurisdiction? If such surety be liable, on action, under our local statutes, why demand other, and home sureties, when the estate is to derive benefit from action on the part of such foreign administrator? Is it not true that "equality is equity," and that this benign principle should be operative in all instances where the good of the body politic will not be sacrificed in the interest of the individual?

The principle is settled that an executor or administrator appointed in a neighboring State (that is to say, a *foreign* executor or administrator,) cannot be sued *as such* out of the State conferring his authority.—*Campbell, Adm'r, v. Tousey, Ex'r*, 7 Cowen, 63.

Such foreign administrator or executor can only be sued as administrator or executor *de son tort*, and creditors, through such an administrator, cannot bind the estate.—7 Cowen, 63, and *Campbell v. Sheldon*, 13 Pickering, 8. Besides, our own statute holds (Rev. Code, § 2292) that " no person is liable to an action as executor of his own wrong," except " to the executor or administrator" for the value of all the property which may have come into his hands under a particular state of facts fully specified.

How, we ask, if the principles above enumerated be *law*, could the judgment against J. L. Martin, a *foreign admin-*

*istrator*, be conclusive against his purported surety, L. V. B. Martin, the appellee?

Again, the undertaking of the sureties is to answer for the acts and doings of their principal within the jurisdiction only of the court granting the letters of administration. This fact is evidenced by the requirement of Revised Code, § 2293, requiring the foreign administrator to record his foreign letters, duly authenticated, and to give a new bond, before he is permitted to execute the functions of his office.

With becoming deference to the opinion of the learned Justice delivering the opinion in this cause, we venture to maintain that the judgment against the administrator was not conclusive against his sureties. To sustain this view of the case, we invite a careful reading, by the court, of §§ 2281 (1922) and 2282 (1923), Revised Code. In the former, execution may issue against the administrator *and his sureties* upon the return of execution (on decree of the probate court against the administrator) "no property"; but in the latter section, upon a like state of facts, the execution can only be issued against the administrator, *personally*. Now, we ask, why provide for issue against the sureties upon return of the execution "no property," in the former, and not so in the latter, if it be true that the judgment of the circuit court be conclusive against the surety? Why render it necessary to sue upon the bond, suggesting a *devastavit* in this instance, when we find the bond required in both instances taken and approved by the same officer? Let us suppose that a decree had been rendered against the administrator in the probate court about the time of the rendition of this judgment in the circuit court, and what would have resulted? In the former, execution being returned "no property" upon the decree, "an execution may issue against such executor or administrator and his sureties;" whilst in the latter a long and tedious litigation is opened up for the judgment creditor in the circuit court. It is true that the statute of 1826, Clay's Dig. 228, § 34, referred to in the opinion of the court in this case, is not incorporated *in his verbis* in the Revised

Code, yet we maintain that the provisions and benefits of it are fully secured by section 2282 (1923) of said Code.

B. F. SAFFOLD, J.—Application for rehearing over-ruled.