[Banks v. Speers.]

# Banks *v.* Speers.

*Ejectment.*

1. *Decedent's lands; statutory powers of personal representative.*—An administrator has the right to the possession of the lands of his intestate for the purposes of administration subject only to the rights of dower, homestead and quarantine, and when asserted by him, it intercepts the descent of the lands to the heirs.

2. *Burden of proof as to necessity of subjecting lands to administration.* In an action of ejectment by an administrator to recover lands of his intestate from a grantee of the widow and heirs at law of the decedent, brought more than eighteen months after grant of letters, after it is shown that there are unsatisfied judgments against the anministrator in his representative capacity, the burden of proving that there are personal assets in the hands of the administrator sufficient to pay the debts of the estate, is on the defendant.

3. *Abandonment of homestead by widow.*—When it appears that in July, 1888, the widow of a decedent conveyed and abandoned a homestead previously set off to her out of her deceased husband's lands, the heirs being of age, such abandonment and conveyance wrought a forfeiture of such homestead right and the act of Feb. 28th, 1889, (Pamph. Acts. p. 113) exerts no influence over homestead rights, which had been divested before its passage.

APPEAL from Walker Circuit Court.
Tried before Hon. JAMES B. HEAD.

SMITH & LOWE, and W. B. APPLING, for appellant, insisted that the judgments were conclusive evidence of assets in the administrators hands, citing *Grimmett v. Henderson*, 66 Ala. 521; *Kyle v. May*, 22 Ala. 692; that a conveyance of the homestead was not an abandonment: *Plummer v. White*, 101 Ill. 474; *Miller v. Finegan*, 7 So. Rep. 140.

COLEMAN & SOWELL, for appellee, in reply, insisted that the judgments were not conclusive except as between the parties, citing 2 Brick. Dig. p. 148, 3 *Ib.* p. 236; *Masterson v. Pullen*, 62 Ala. 145.

STONE, C. J.—This is a statutory real action, brought by Speers as administrator *de bonis non* of M. D. Burchfield, deceased, to recover of William Banks *et al.* lots 7 and 8 in the town of Jasper, Walker county. The plaintiff recovered and Banks appeals.

Vol. 97.

[Banks v. Speers.]

In the spring of 1886, M. D. Burchfield died, having a family consisting of a wife and children, two of the latter being minors. He with his family resided on the lots in controversy, having his homestead there. The lots with their improvements at that time, and during all that year, were worth less than two thousand dollars. On the 20th day of July, 1886, S. R. Burchfield was appointed and qualified as administrator of the estate of M. D. Burchfield, deceased, John Speers, plaintiff in this suit, being one of the sureties on his bond as such administrator. On the 14th day of August, 1886, Artemissa Burchfield, widow of M. D. Burchfield, deceased, made a written, sworn claim of homestead exemption, in favor of herself and of her two minor children, of said two lots 7 and 8, and, in the presence of the administrator, filed it in the office of the judge of probate. The court was not then in lawful session. She, with her said children, continued to reside on said lots without molestation until March, 1888, when she contracted to sell them to William Banks for $2500. She made this contract in the names of herself and minor children, and immediately surrendered possession to Banks, and, together with her children, removed permanently from the premises. On the 2nd day of July, 1888, the minor children having become adult, she together with all her children, the heirs at law of said M. D. Burchfield, executed to Banks a conveyance of said lots in fee, with customary covenants of warranty.

At the time of M. D. Burchfield's death a suit was pending against him in Walker county Circuit Court. This suit was revived against S. R. Burchfield, administrator in chief, and in February, 1888, judgment was recovered against him as such administrator for $220. Two other judgments were rendered against said S. R. Burchfield as administrator of M. D. Burchfield, before justices of the peace—the two amounting to about $125. These judgments are still unpaid.

On the 2nd day of November, 1891, S. R. Burchfield resigned as administrator, and five days afterwards John Speers was appointed and qualified as administrator *de bonis non.* On the 27th day of December, 1891, a judgment was recovered against him as administrator aforesaid for $95. There are no other debts of the estate of M. D. Burchfield that are not barred, either by non-claim, or by the statutes of limitation; and there are not shown to be any personal assets remaining in specie. If any personal assets of the estate ever went into the hands of S. R. Burchfield, administrator in chief, or into the hands of Speers, administrator

36–97

*de bonis non,* the record is silent on the subject. The estate of M. D. Burchfield has never been declared or reported insolvent, and the sureties of S. R. Burchfield on his administration bond are solvent. The present suit was instituted November 9, 1891, and is a suit by the administrator *de bonis non* to recover the possession of the lands, in his mere right as administrator.

We have held that the administrator, as such, is clothed by our statutes with a right to the possession of the realty for purposes of administration, and that that right, when asserted by him, dominates and intercepts the descent of the lands to the heir.—*Calhoun v. Fletcher,* 63 Ala. 574; 3 Brick. Dig. 464, § 146. This right, however, can not interfere with the rights of dower, quarantine and homestead.—*Id.* This power and right of possession spring naturally and necessarily out of our statutes, as found in various sections of our Code, now known as the Code of 1886. The same provisions are shown in the Code of 1876, and the numbers of its sections are stated in parentheses. The descent of lands is, "subject to the payment of debts." § 1915 (2252). The bond of the personal representative must be "in a penalty equal to at least double the estimated value of the real and personal property of the estate." § 2024 (2365-2366.) "All the property of the decedent, except as otherwise provided, is charged with the payment of his debts."—§ 2078 (2429.) Lands of decedent may be rented by the personal representative, "and such rent is assets."—§ 2102 (2446.) The estate of a decedent can be declared insolvent only "when the real and personal property is insufficient for the payment of the debts."—§§ 2222 (2549), 2223 (2550), 2224 (2551.) In reporting an estate insolvent, the report must contain not only a statement of the personal effects, but also "a full statement of the real property of the deceased, or any interest therein, and the local situation and estimated value thereof."—§ 2224 (2551.) So, lands under our system are, in the fullest sense, assets of the decedent's estate for the payment of his debts.

It is contended for appellant, that by suffering judgments to go against them in their representative capacity on debts of their intestate, M. D. Burchfield, both the administrator in chief and the administrator *de bonis non* must be held to have admitted that the estate had assets sufficient to pay those debts; that this, as against them, is a conclusive presumption, and that they will not be heard to deny it. The contention takes a further step, and claims that the sureties on their bonds are also concluded by those recoveries, and

that they too are estopped from denying that their principals had sufficient assets to pay the judgments they permitted to be rendered against them. Based on these assumptions, it is contended that there being no debts against the estate other than those in judgment, and it being thus conclusively shown and ascertained that sufficient assets went into the hands of the administrators to pay them, no ground exists authorizing the sale of the lands for the payment of debts, and consequently the present plaintiff has no right to recover the possession of the land.

It is certainly true that the lands of a decedent will not be ordered to be sold for the payment of debts, when there are no debts of the estate to be paid. The existence of debts to be provided for is a jurisdictional inquiry. So, if there be sufficient personal assets to pay the debts, there can be no order for a sale of the lands for their payment.—Code of 1886, § 2103; *Owens v. Childs*, 58 Ala. 113; *Lee v. Downey*, 68 Ala. 98. Of course this principle does not apply, if there be a will giving authority to sell lands in preference to personal property for the payment of debts.

The question, to what extent a judgment or decree rendered against a personal representative in his representative capacity is binding on him and on his sureties, has been very often considered by this court. It has always been held that such judgment or decree, if permitted to stand, is conclusive on the principal, the personal representative, of the amount due and owing from him as such representative, and that he has in his hads sufficient assets for its payment. These presumptions he will not be heard to gainsay or deny. As to the effect upon his sureties, a distinction was taken at an early day between decrees rendered against the representative in the Orphan's or Probate Court, on settlements made therein, and judgments rendered against him on debts or liabilities of his testator, or intestate. In cases falling within the first class—decrees on settlements in the Probate Court—it has been uniformly ruled that the sureties were bound and concluded by the decree rendered precisely and to same extent as their principal was bound.—*Judge Limestone Co. Ct. v. Coalter*, 3 St. & Por. 348; *Burke v. Adkins*, 2 Por. 236; *Slatter v. Glover*, 14 Ala. 648; *Chilton v. Parks*, 15 Ala. 671; *Lamkin v. Heyer*, 19 Ala. 228; *Kyle v. Mays*, 22 Ala. 692; *Holley v. Acre*, 23 Ala. 603; *Seawell v. Buckley*, 54 Ala. 592; *Glenn v. Billingslea*, 64 Ala. 345; *Hailey v. Boyd*, *Ib.* 399. One reason given for this ruling, and a very strong one, was and is that in settlements in the Probate court, the receipt of assets by the representative, the amount received,

and the surplus after allowing all proper disbursements, are the very questions considered and passed upon. They constitute the basis of the decree. And the form of the decree is another reason. It is not that the sum be levied and collected of the property and effects of the testator or intestate, in his hands to be administered. It is that he pay the amount decreed; for the presumption is that he has converted the assets into money.

· In suits against the personal representative to enforce a debt or liability of his testator or intestate, the issue is different. The question in such case is, the decedent's liability *vel non;* and the inquiry of assets in the representative's hands is not one of the issues presented. The recovery is not against the administrator personally, but to be levied of the goods and chattels of the decedent, in his hands to be administered. Hence, in all our early decisions it was held that such recovery did not conclude or estop the sureties from denying that the administrator had come into possession of assets with which to discharge the indebtedness. *Thompson, Judge v. Searcy,* 6 Por. 393; *Miller v. Gee,* 4 Ala. 359; *Dean v. Portis,* 11 Ala. 104; *Reid v. Nash,* 23 Ala. 733; *Amason v. Nash,* 24 Ala. 279; *Harrison v. Harrison,* 39 Ala. 489, 5.0.

The case of *Grimmett v. Henderson,* 66 Ala. 521, asserts a principle which is not reconcilable with the authorities last above cited. It is there in effect ssid, that if the personal representative suffer a judgment to be rendered against him on a debt due from the estate he represents, he thereby estops both himself and his sureties from denying that he had received assets sufficient to pay the debt. This decision is rested on *Grace v. Martin,* 47 Ala. 135. The citation appears to support the later decision, but in that case the administrator had been in possession of ample assets to pay the debt, but had distributed them before the judgment was recovered. The later case— *Grimmett v. Henderson*—presented only the rulings on demurrers. The suit was on an executorial bond, and sought to recover from the executors and their sureties the amount of a judgment plaintiff had recovered against the former on a debt due from their testator. The complaint alleged the recovery of the judgment, to be levied and collected *de bonis testatoris,* and the issue and return of execution "No property found." But the complaint did not rest the right of recovery on these unaided facts. It went farther, and averred "that they (the executors) received assets of said estate sufficient to pay the same, and have wasted and converted said assets of said estate." So,

[Banks v. Speers.]

when it was asserted that "The execution *de bonis intestatis,* (*testatoris?*) awarded against the executors, followed by a return of "No property found," was conclusive of a *devastavit,* not only against the defendants in the judgment, but also against the sureties on the bond," this court decided a question that was not presented by the record. Such utterances, being at most *dicta,* are not considered conclusive, when the question comes again before us. We are unwilling to follow the expression we have copied from *Grimmett v. Henderson, supra.* We hold that the recovery of a judgment against a personal representative on a debt of his testator or intestate, is not conclusive upon the representative's sureties that there were sufficient assets of the estate to pay the liability thus ascertained.

We have shown that in this case there are unsatisfied debts against the estate of M. D. Burchfield, which have been reduced to judgment against his personal representatives. If sufficient personal assets, after carving out of them the widow's exemptions, were left to pay his debts, the case has not arisen which authorizes the sale of lands of decedent for their payment.—Code of 1886, §§ 2103-4. In other words, unless a case is shown in which "the personal estate is insufficient" for the payment of the debts, the personal representative is not entitled to an order for the sale of the lands; nor as we have shown, should he be allowed to recover the lands for purposes of administration, when it appears affirmatively that they can not be applied to such purpose.—*Owens v. Childs,* and *Lee v. Downey, supra.* What are the presumptions in such case, and on whom rests the burden of proof?

Our system for the administration of estates is not a new one. It commenced with the formation of the Mississippi Territory during the early years of this century. It has had steady growth and development; and in declaring rules of practice and procedure to be observed on the presentation of issues not heretofore pronounced upon definitely, we should endeavor, as far as possible, to observe and preserve the harmony of our system as established. Under our statutory system, eighteen months after administration granted are allowed for the presentation of claims: and cases may arise, in which the personal representative can not till the end of those months, determine whether the personal effects will yield enough for the payment of the debts. Our statutory system authorizes him to intercept the descent of the realty, and to demand and recover the possession, even against the heir.—3 Brick Dig., 464, §§ 146 *et seq.*

[Banks v. Speers.]

It is manifest that until after the expiration of eighteen months, it can not be known with certainty what debts exist against the estate, nor can it, in all cases, be certainly known during that time that the lands will, or will not be wanted for the payment of debts. Cases may and do exist of an insufficiency of personal effects to meet all the debts, and yet the rents of the realty for a brief time would supply the deficiency, and save the lands from sale. So, it is clear that much must be left to the enlightened discretion of the personal representative, whether he will or will not assert his right to take possession and control of the realty, during the eighteen months allowed for the presentation of claims against the estate. It is safe to assert that up to the end of eighteen months after administration granted, neither the heir, nor any one claiming in his right, can be heard to dispute the right of the personal representative to the possession of the realty, as assets of the estate. Such is the effect of our statutes converting real estate into assets for the payment of debts, when the personal estate is insufficient therefor.

The suit in the present case was not brought until more than eighteen months after the appointment of the administrator in chief, and we thus meet the question, does that change the rule, and if so, to what extent? We have shown above how far real estate is made assets of a decedent's estate for the payment of debts. When, as in the present case, suit for the realty is instituted by the admintstrator more than eighteen months after the appointment in chief, what is the presumption as to the insufficiency of personal assets for the payment of debts? On whom is the burden of proof as to that fact? We think we give best effect to the harmonies of our system by holding, as we do, that in the absence of all proof on the subject, the bringing of the suit raises the presumption that there was a deficiency of personal assets, and that the real estate was and is necessary to supply that deficiency. We will not, in the absence of proof, presume the personal representative has committed a *devastavit*, and on that presumption deny to the plaintiff the right to recover.

The right to sell the real estate for the payment of debts does not necessarily follow from the recovery of the possession of the homestead. To obtain an order to sell the lands, it must be averred and shown that the personal estate was insufficient therefor. If the personal effects, over and above exemptions, have been sufficient to pay the debts, the *devastavit* suffered by the administrator furnishes no excuse

for selling the lands.   The administrator and his sureties in
such case must be looked to to make up the deficit ; and
proof of such facts is a bar to any order of sale that may be
asked for.   In such case *insufficiency of the personal estate to
pay the debts* does not exist, and there is no statutory au-
thority to order a sale of the land.—Code of 1886, §§ 2103-4.

It is contended for appellant in this case that under our
statutory system, the lots in controversy, being the home-
stead of M. D. Burchfield at the time of his death, is exempt
" from administration and the payment of debts,   ·  ·  ·
during the life of the widow, or the minority of the child or
children, whichever may last terminate."—(Code of 1876,
§§ 2821 & 2827 : Code of 1886, § 2543) ; and inasmuch as
Mrs. Burchfield, the widow, is still living, the statutes re-
ferred to expressly prohibit the  sale of the lots during
her life time, and no steps can lawfully be taken, looking to
such sale.

The exemption in favor of the widow  and minor children
is only an exemption of the lesser estate—the life estate—as
distinguished from, and  carved out of  the greater estate of
the deceased.   The exemption is for the benefit, and more
quiet enjoyment of the lesser estate.   Giving it its largest
extent, it was intended to be a quality and constitutional
element of the lesser estate, with no intention to impair the
greater estate, farther than was considered necessary to a
free and proper enjoyment of the lesser.   We have no hesi-
tation in affirming that if from any cause the lesser estate
fell in or terminated, all its attributes expired at the same
time, and with them the property's exemption from adminis-
tration and from sale for the payment of debts.   Whether,
when homestead exemption is  claimed and set apart to the
widow or minor children, it is permissible to obtain an order
and sell the remainder in such exempt realty for the pay-
ment of the estate's debts—the personalty being insufficient
therefor—or whether that remainder must be left undis-
turbed until the termination of the exempt homestead right,
is a question not raised by this record.

In *Barber v. Williams*, 74 Ala. 331, speaking of the home-
stead exemption reserved to the widow and  minor children
after the death of the head of the household, it was said
" the right   ·  ·  is that of occupancy—it does not include
a right to convey  or incumber the homestead.   ·  ·  The
abandonment works a destruction of her privileges ; and as
she has no power of  alienation, if she does alien it, like the
alienation of her right of  dower  before assignment, the de-
scent to the heir is not thereby interrupted, and  he may

maintain ejectment against her aliens, or those entering under him." See also *McConnaughy v. Baxter*, 55 Ala. 379; *Boyle v. Shulman*, 59 Ala. 566. And in *Miller v. Marks*, 55 Ala. 3.2, 341, it was said: "Homestead exemption under section 2, Art. XIV of the Constitution, being dependent on continued occupancy of the premises, ceases when that occupancy, from any cause, is put an end to." We have shown that during the year 1888, Mrs. Burchfield and her children sold and conveyed the premises on which she had her homestead, and that thereupon she with her entire family removed from the premises. It is not claimed that she had any occupancy after that time. Under the law as it then stood, this was an abandonment of her homestead exemption, operative alike against her, and against her alienee.

At a later date—February 28, 1889—pamph. Acts 113—it was enacted "that the widow and minor children or child of any deceased husband or father, who have had set aside to them, or to the widow, or minor children, or child, a homestead of the property of such deceased husband and father, under the laws of Alabama, shall not be held to have forfeited the same to the claims of heirs or creditors, by a removal therefrom, so long as such widow and minor children, or child, shall continue to reside in the State of Alabama." A second section of the act provides, "that the provisions of this act shall apply to homesteads heretofore set apart, as fully as to those set apart hereafter." It is contended for appellant that this statute was simply declarative of what the law then was, and that its effect was to save the homestead in this case from forfeiture, for the benefit alike of Mrs. Burchfield and her alienee.

If the statute we have copied had been enacted before the sale was made to Banks, we need not and do not decide that such sale and abandonment of the possession would work a forfeiture of the homestead right. On principle it would seem that it should not. Giving the statute such interpretation would, in no sense interfere with vested property rights. When, however, as in the present case, the homestead right had been abandoned and lost before the enactment of the statute, the question is very different. By the sale and abandonment of possession, all property and right of property in the homestead had passed out of Mrs. Burchfield, and had not passed to Banks, her alienee. It had vested in the heir at law, subject to the qualified right of the personal representative to claim it for the payment of debts. To allow the statute to retroact and re-vest title in Mrs. Burchfield, or her alienee, would be, by a mere edict

of legislation, to take property from one and vest it in another. Such divestiture of property rights, after they have accrued, is not within the power of legislation.—*Coosa River Steamboat Co. v. Barclay*, 30 Ala. 120; 1 Brick. Dig. 371, § 162. We hold that the act of February 28, 1889, exerts no influence in the decision of this case.

We summarize our conclusions as follows: Subject to homestead exemption and to the rights of quarantine and of dower, lands of a decedent descend to the heir, as at common-law, unless the personal representative asserts his right to possess and control the same for purposes of administration.

Lands being made assets for the payment of debts, the personal representative may claim the right to possess and control the same, and his claim, thus asserted, will dominate the title of the heir. If made before the expiration of eighteen months after the estate was committed to administration, the heir is powerless to resist his claim of possession; for it can not then be known with certainty that the lands will not be needed for the payment of debts.

If the claim of possession or control is not asserted until after the expiration of eighteen months allowed for the presentation of claims against the estate, then the personal representative has only a *prima facie* right to the possession. It is met and successfully overcome, if there are no debts or expenses of administration to be paid, or, if there have been sufficient personal assets for these purposes, which have been wasted or misapplied. Even when the personal representative obtains possession of the realty, or, without obtaining such possession, petitions for an order to sell lands for the payment of debts, unless there is a deficiency of personal assets for the purpose, he is not entitled to an order for the sale of the lands. And it requires a deficiency in fact to justify the order of sale. If the deficiency has been brought about by maladministration, or by a devastavit committed by the personal representative, a case is not made justifying an order of sale. He and his sureties are the parties to be looked to.

The foregoing rules would not be absolutely applicable to all cases. They are controlling, only when there is neither statutory nor testamentary direction to the contrary.

If the record before us truly sets forth the facts, the sale and conveyance to Banks, made as they were by the widow and all the heirs, vested in him all the title and ownership of the lots, except what may be required to pay the judgments brought to view in the trial below, and the attendant

[Thompson, et al. v. Boswell, et al.]

expenses of administration. This is the extreme limit of the right the administrator *de bonis non* can assert. Anything beyond that, which may be realized from a sale of the lands, will become the property of Banks, the purchaser. Such being the outside limit of the liability resting on the lots, it follows that if those debts and the attendant expenses are paid, the extremest right that Speers could assert will have been met and satisfied; and no further disturbance of Banks' title and possession can come from that quarter. There is no error in the record.

Affirmed.