# Baldwin, et al. v. Alexander, et al.

*Bill by Surety to be Subrogated to Rights of the Administrator, and for a Refunding from Distributees.*

[Decided Feb. 17, 1906, 40 So. Rep. 391.]

1. *Descent and Distribution; Real Estate.*—On the death of a decedent his real estate descends directly to his heirs or devisees.
2. *Administrators; Debts; Lands to Pay Debts; Insufficiency of Personalty.*—Real estate does not become assets in the hands of an administrator for the payment of debts, and may not be sold for that purpose, unless the personal property is insufficient.
3. *Subrogation; Administrators; Sureties.*—Where an administrator, without knowledge of the existence of a claim or debt due a minor, settled properly his accounts and paid the balance in his hands, in amount sufficient to pay claims of minor, to the heirs of the estate; and later, and within the time allowed to minors to file claims, suit was instituted and judgment recovered against him and his sureties, on such claim, which judgment the sureties paid, and the administrator is insolvent, the sureties are entitled to be subrogater to the rights of the administrator against the distributees.
4. *Descent and Distribution; Fraudulent Conveyance by Distributees.*—Where lands of an estate have been fraudulently conveyed by the distributees to certain person, who had notice of the fraud, such fraudulent conveyance would not stand in the way of subjecting the lands to the repayment of the debt paid by the sureties of the administrator, the fraudulent vendees not being *bona fide* purchasers, for value without notice; and the lands being regarded as still in the hands of the heirs.
5. *Administrators; Voluntary Settlement of Estate; Knowledge of Outstanding Debts.*—If an administrator, with knowledge of outstanding debts, voluntarily makes a distribution of assets of the estate, and the assets prove insufficient to pay the debts, he cannot compel the distributees to refund; but if he was not negligent, and acted in good faith in making distribution, without knowledge of the outstanding debts, he may require a refunding.

Appeal from Autauga Chancery Court.

Heard before Hon. W. W. Whiteside.

This was an action by Baldwin, et als., as sureties on the bond of the administrator against the distributees of the estate and their grantees, seeking to have themselves subrogated to the rights of the administrators to have the land sold for the payment of a claim against the estate. The facts are sufficiently set forth in the opinion. Demurrers were interposed to the bill and a motion made to dismiss it for want of equity. The chancellor sustained the demurrers and granted the motion to dismiss, and from this decree, this appeal is prosecuted.

GUNTER & GUNTER, for Appellants.—The entire mistake of the learned chancellor arose from the misapplication of a very correct maxim or rule of law, that when one of two innocent persons must suffer a loss, he must bear it who is most to blame. The chancellor very correctly holds that the appellant, (sureties of the administrators) stand in the shoes of the administrator and have no greater rights than he would have. Now, how do the purchasers from the heirs stand? Do they stand otherwise than in the shoes of their vendor? They cannot claim that they are bona fide purchasers without notice of the equity of the administrator, to have the lands sold for the debts, without a plea or answer setting up that they are bona fide purchasers without notice, unless the facts that constitute them bona fide purchasers for value without notice, are clearly shown by the bill of complaint.—1 Pom. Eq. section 784. It cannot be pretended that the bill in this case clearly shows that they are such. It is impossible to affirm that the bill on its face shows that all the essential elements to constitute one a bona fide purchaser for value without notice is the position of these respondents.—1 Pom. Eq. section 746; *Croft v. Russell*, 67 Ala. 9. The bill in this case expressly avers notice which it was unnecessary to do, as the party setting up the defense of the bona fide purchaser must allege the want of notice.—*Hanchey v. Hurley*, 129 Ala. 306; 30 So. Rep. 742; *Carroll v. Malone*, 28 Ala. 521.

The defendant's title is such that it was impossible for them to purchase without notice. The administration was not closed, suits against the administrator and heirs resulting in the judgment now sought to be enforced were pending. Under our system of laws, the heirs do not succeed to an absolute ownership, and they cannot alien the land to the prejudice of creditors. In fact and in law, they have no right to the real estate of their ancestor, except that of possession until the creditors have been paid. And a sale to pay debts overturns all sales by the heirs.—*Watkins v. Holman*, 16 Pet. 64; *Drake v. L. E. C. & C. Co.*, 102 Ala. 501-9, 14 So. 749; *Nelson v. Murfee*, 69 Ala. 598; *Streety v. McCurdy*, 104 Ala. p. 502; *Banks v. Speers*, 114 Ala. 223; 11 Ency. of Law, (2 Ed.) 1096; *Davis v. VanSands*, 45 Conn. 602; *VanSyckle v. Richardson*, 13 Ill. 173; 4 Notes to U. S. Reports, p. 143.

Notice to the purchasers adhered in the face of the title they held.—*Shorter v. Frazer*, 64 Ala. 74.

"The creditors have a lien that attaches to and accompanies the land until lost, whether in the hands of the heir or his grantee."—*Garvin, Bell & Co. v. Stewart*, 59 Ill. 231; Code of 1896, Sec. 125.

It will not do to say the claim asserted in behalf of the sureties is not a debt against the estate. That has passed in *rem judicatam*. The administrator was regularly sued, the heirs were parties to the suit, and whatever transpires in good faith in such proceedings, which are adversary in their character, even when the heirs are not parties, are conclusive on the world as to the character and amount of the debt.—*Scott v. Ware*, 64 Ala. 184-5; *Martin v. Ellerbe*, 70 Ala. 341-2-3; *Speers v. Banks*, 97 Ala. 560.

The sureties paid the debt and they stand in the shoes of the administrator, and both stand in the shoes of the creditor, unless the purchaser finds something in the face of the bill to make it inequitable to appropriate the land to the payment of the debt. Of course, if it appears on the face of the bill as between the administrator and the heir, or if it hereafter appears by plea or answer that the administrator has been guilty of a de-

vastavit of the personal estate against the heir, those
standing in the shoes of the administrator would have
no right against the land.—*Banks v. Speers,* 97 Ala. 569.
But if the whole estate is appropriated to the payment
of debts and for the convenience of the heir, the real es-
tate is secondarily liable and the heir receives and appro-
priates the primary fund, he cannot be heard to say that
the secondary fund should be exempt against creditors
of the administrator succeeding to the creditor's right.
*Colbert v. Daniel,* 32 Ala. 314; *Alexander v. Fisher,* 18
Ala. 374.

The purchasers must stand in the shoes of the heirs;
so it is a case of the sureties and administrator standing
in the shoes of the creditor, against the heirs and the
purchasers standing in their shoes; and the question
then is the single one, whether the heir can, on receiv-
ing and not returning the primary fund to pay the debt,
say that there has been a devastavit of the primary fund,
and make the administrator pay the debt of his ances-
tor when he is in possession of ample assets descended,
on the whole of which the law creates a lien in favor of
the debt.—Code, Sec. 125; *VanSyckle v. Richardson,* 13
Ill. 171; *Bell v. Stewart,* 59 Ill. 231; *Daniel v. Colbert,*
42 Ala. 314; *Crutchfield v. Houston,* 22 Ala. 76-83; Ib.
14 Ala. 49; *Booth v. Booth,* 1 Bear. 126; *Chillingsworth
v. Chambers,* L. R. Chan. Div. (1896) Vol. 1, 685-699.

"It was treated by Lord Eldon as clear law in his day
that a *cestui que trust* who concurs in a breach of trust
is not entitled to relief against his co-trustee in respect
of it: See *Walker v. Symonds,* 3 Swans. 1, 64. In Lewin
on Trusts, 8th ed., p. 918; 9th ed., p. 1053, many other
authorities will be found to the same effect; and Lord
Eldon's statement of the law was distinctly approved
and followed in *Farrant v. Blanchford,* 1 D. J. & S. 107.
Moreover, as already pointed out, it was decided in *Ev-
ans v. Benyon,* 37 Ch. D. 329, that this doctrine applies
to a person who becomes a *cestui que trust* after his con-
currence. Further, in *Butler v. Carter,* L. R., 5 Eq. 276,
281, Lord Romilly stated distinctly that where one of
two trustees was himself a *cestui que trust* he could not
call upon a co-trustee to replace stock which they had

both permitted to be misapplied.—2 Pom. Eq. Secs. 852-3-4.

MARKS & SAYRE and STEINER, CRUM & WEIL, for Appellees.—The appellant's rights, if they have any, are sought under the doctrine of subrogation. Subrogation is an equity called into existence for the purpose of enabling a party secondarily liable, who has paid the debt, to reap the benefit of any securities which the creditor may hold against the prinicpal debtor, and by the use of which the party paying may thus be made whole.—*Brown v Lang.*, 4 Ala. 50; *Vandiver v. Ware*, 65 Ala. 609; 118 Pa. St. 138.

It is self evident that Lola Daniels could never, under the facts of this case, have sued the heirs and distributees and subjected their estate and it necessarily follows that no one claiming under subrogation to her could have rights superior to her own.—*Scott v. Ware*, 64 Ala. 174; *Pyke v. Searcy*, 4 Port. 59; *Steele v. Steele*, 64 Ala. 455; *Banks v. Spears*, 97 Ala. Ib. 103 Ala. 436; *Ledyard & H. v. Johnson*, 16 Ala. 550; *Baldwin v. Daniel*, 40 So. Rep. 421; Woerner on Administrators, Vol. 2, p. 1267; *Sharpe v. Sharpe*, 76 Ala. 317; Williams on Executors, 6 Am. Ed. 1456.

Whetstone had no right to subject these lands to the payment of the Daniels debt. In the first place, the distribution by Whetstone of the estate of Mills Rogers was voluntary.—*McQueen v. Whetstone*, 137 Ala. 301; *Baldwin v. Daniels*, supra. Of course the administrator is the owner in trust of the personal estate to pay debts and then for distribution. His power and dominion over them are complete.—*Steele v. Steele*, supra. His power and authority over real estate is entirely statutory—a bare authority, that he may execute only in the manner prescribed by statute, and when there are sufficient personal assets to pay the debts of a decedent he not only has no interest in the land, but is without power or authority over it for any purpose, except in a proper case to sell for division. See cases cited above. During the continuance of his administration, the statutory provis-

[Baldwin, *et al.* v. Alexander, *et al.*]

ion as to procedure are exclusive whether the estate is being administered in the probate court or in the chancery court.—*Sharpe v. Sharpe,* 76 Ala. 317. In either court the jurisdictional facts must be averred—existence of debts and insufficiency of personal assets—neither is alleged here. Then whatever personal rights may exist in favor of the administrator against the recipients of the personal assets as the primary fund for the payment of debts, certainly no contract lien has been fastened on the land nor has any such lien been created by law. Even the personal rights of creditors against the distributees have been lost by the laches of the administrator.—*Banks v. Speers,* supra and other cases cited. An administrator cannot recover assets, wrongfully disposed of by him.—*Barker v. Daughtry,* 111 Ala. 529.

While section 4183 of the Code enlarges the liability of the trust estate in certain enumerated instances, except in those instances the estate of the decedent is not chargable with any except the debts due by the testator at the time of his death.—*Steele v. Steele,* supra; *Taylor v. Crook,* 136 Ala. 375; *Bolen v. Hogan,* 143 Ala. 652.

HARALSON, J.—The real estate of a decedent, as is well understood on the death of the ancestor, descends instantly to the heir or devisee. At common law, the real estate was never subject to payment of the debts of the decedent. But this common law rule has been changed by statute in this state. The Code of 1896 (section 125) provides, that "all property of the decedent, except as otherwise provided, is charged with the payment of his debts, and, if necessary may be sold for that purpose;" but it is equally well understood that the lands do not become assets of the estate for the payment of debts, unless the personal property of the decedent is insufficient therefore. The existence of debts and the insufficiency of personal assets to pay them, are essential conditions for resorting to the lands to pay the debts.—*Banks v. Speers,* 97 Ala. 560, 11 South. 841; *Scott v. Ware,* 64 Ala. 174; *Steele v. Steele's Adm'r,* 64 Ala. 439, 38 Am. Rep. 15; *Stovall v. Clay,* 108 Ala. 105, 20 South. 387.

In the case before us, Mills Rogers died in 1888. Whetstone and Davis qualified as his admnstrators, but Davis had nothing to do with the administration. He left the state, never returned and died insolvent. All the property, consisting of lands and personal property, went into the hands of the administrator Whetstone. He paid all the debts that were presented, or of which he had any information, and in 1890, he made a final settlement of the estate in the probate court. It is not shown that this settlement was coerced, but it was voluntarily made by him. Under the facts averred, the estate was ripe for a settlement, and if it had not been made voluntarily by the administrator, he might have been forced by the heirs to make it. On and after this settlement, he turned over to the heirs of the estate, Maud Rainey and Mackey Davis, who were his daughters, and the grand-children of the deceased all the assets of the estate. After the payment of the debts of the deceased, there remained in the hands of the administrator, over $20,000.00 of personal property, and this he paid over or distributed to the said two heirs.

In 1895, as is alleged, one Lola McQueen, who had just arrived at age, presented a claim against said estate, and brought suit thereon in the chancery court of Autauga county, making parties thereto said Whetstone as administrator of said Mills Rogers and said heirs at law. After long litigation, she finally recovered a decree at the March term, 1901, of said chancery court for $6,000.00, which on appeal, was affirmed in this court. After executions were returned "no property" against the administrator as such and personally, suit was brought by said Lola McQueen against the appellants, A. M. Baldwin and J. W. Dimmick, as sureties on the administration bond of said Weststone, and judgment was recovered against them for $5,703.23, which on appeal was affirmed by this court, on the 30th of June, 1905. Complainants, the appellants, paid said judgment with the interest thereon, on the 24th of July, 1905, amounting to $6,000.00.

It is averred that said Whetsone died insolvent in July, 1905, and that said heirs are also insolvent. It is

further shown, that the assets of said estate were dis-
tributed and turned over to said distributees and heirs
by said Whetstone as administrator, in good faith for
the interest and at the request of said distributees, with-
out any knowledge or information on the part of said
Whetstone, of the existence of said claim in favor of said
Lola McQueen, now Lola Daniel, who being an infant of
tender years, was not required to present her claim un-
til she became of age.

It is averred that the heirs, with the intent of hinder-
ing, delaying and defrauding the creditors of the said
estate of Rogers, and especially the said Lola McQueen,
whose debt was then in suit, either separately or jointly
conveyed away the said lands, and said lands are now
held by the grantees of the said heirs, Maud Rainey and
Mackie Davis, of one or both of them, or by persons
claiming under or through conveyances from them; that
each and all of the said vendees of said Rainey and Da-
vis, and the purchasers from them, either bought said
lands with notice of said fraudulent intent of said heirs,
in disposing of them pending the said suit of Lola Mc-
Queen, or had notice that the said lands were assets of
the estate of the said Rogers, liable for his debts, and
liable for the repayment of the debt of the said Lola Mc-
Queen, which the said sureties might be compelled to
pay, etc.

It would seem, that if Whetstone, the administrator,
were alive, and the land of the estate which he turned
over to these heirs were still in their hands, and he had
paid the judgment rendered against him for Lola Mc-
Queen's claim, and the personal property he had paid
over to them, had been spent or made away with by
them, and it was no longer possible to have it applied to
the reimbursement of the administrator, in such case
the lands might be subjected to the payment of said
claim.  If they could be reached by the administrator
for that purpose, it is difficult to see why the complain-
ants, who are his sureties, might not be subrogated to
his rights.  They stand in his shoes, and whatever he
would have a right to do, now that he is insolvent and
dead, they would have a right to do.

As to the principal of subrogation on which complainants rely, it may be sufficient to quote Mr. Pomeroy on the subject: "Where a surety has actually paid or satisfied the principal's obligation, or any part thereof, he is entitled to be reimbursed by the principal debtor, and can maintain an equitable action for that purpose."— 3 Pom. Eq. Juris. (2d Ed.) 1417.

In section 1419 he adds, "The surety who has paid or satisfied the principal's debt or obligation is entitled to be subrogated to and to have the benefit of all securities which may at any time have been put into the creditor's hands by the principal debtor, or which the creditor may have obtained from the principal debtor. By the fact of payment, the surety becomes an equitable assignee of all such securities, and is entitled to have them assigned and delivered up to him by the creditor, in order that he may enforce them for his own reimbursement and exoneration."

The administrator acted in the best faith in turning over these lands to the heirs. He was not personally profited by so doing. The heirs could have compelled his action, if he had not distributed the estate without their interference, as he had no possible excuse for delay. Surely, he could not be punished for doing what the law would have compelled him to do. If he had known of this claim of Lola McQueen, and had taken the risk of turning over the estate to the heirs, we would have reason for holding that he could not now go on these lands for reimbursement; but he did not know of this claim. Speaking of this subject Judge Story says, "In the course of the administration of estates, executors and administrators often pay debts and legacies upon the entire confidence that the assets are sufficient for all purposes. It may turn out, from unexpected occurrences, or from debts and claims, made known at a subsequent time, that there is a deficiency of assets. Under such circumstances they may be entitled to no relief at law. But in a court of equity, if they have acted with good faith, and with due caution, they will be clearly entitled to it, upon the ground, that, otherwise, they will be innocently subjected to an unjust loss, from what the law itself deems an accident."—1 Story's Eq. Juris.

(13th Ed.) § 90. This principle is referred to and quoted approvingly in *Moore v.Lesueur*, 33 Ala. 237.

In *Harkins v. Hughes*, 60 Ala. 322, it is said, "An executor or administrator, *with full knowledge* of outstanding debts (italics ours), volunteering to pay legacies, or make distribution, cannot, if the assets prove deficient compel the legatee or distributee to refund.—2 Redf. Wills, 556; 2 Lomax on Ex'rs, 297; *Alexander v. Fisher*, 18 Ala. 374. The rule is not inflexible; but there must be some fact or circumstance, relieving the executor or administrator from the presumption of negligence and evincing good faith on his part, or it cannot be departed from." If we look for good faith and good excuse, we have them in the case before us.—*Alexander v. Fisher*, 18 Ala. 374.

"In case of debts appearing after the executor has paid away the assets in legacies, of which debts he had no previous notice, and which he is obliged to discharge, then he may by a bill compel the legatees. * * * The legatee takes subject to the liability of being compelled to refund at the suit of a creditor; and when the executor has not been culpable, and is compelled to pay the debt, it seemed * * * he should be substituted to the right of the creditor he has paid."—2 Lomax on Executors, pp. 297, 300. The discussion has proceeded thus far on the theory of the assets being still in the hands of the heirs.

If the fraud of the heirs in conveying these lands to certain parties named, with notice of the fraud, as alleged in section seven of the bill, be true, these conveyances could not stand in the way of subjecting them to the payment of complainants' debt. In that case, as between complainant and such fraudulent vendees, they would be regarded as still in the possession of the heirs, and the vendees would not be regarded as bona fide purchasers for value without notice.

The chancellor sustained a demurrer to the bill, and dismissed it for want of equity. In this it appears he was in error. His decree will be reversed, and one will be here rendered overruling the demurrer and motion to dismiss.

Reversed, rendered and remanded.

DOWDELL, SIMPSON, ANDERSON, and DENSON, JJ., concur.